Present:  Hassell, C.J., Keenan, Koontz, Kinser, Lemons, and Agee, JJ., and Lacy, S.J.[1]

ANGEL M. ANDERSON

v.  Record No. 062051          OPINION BY JUSTICE DONALD W. LEMONS
                                              September 14, 2007
COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal, we consider whether pursuant to Code § 19.2-310.2:1, the taking of a person's DNA upon arrest for certain crimes constitutes an unconstitutional seizure.  We also consider whether the presentation of DNA evidence in this case violated the defendant's right of confrontation under the Sixth Amendment.

I.    Facts and Proceedings Below

On July 23, 1991, Laura M. Berry ("Berry") was raped, sodomized, and robbed while walking to the school where she worked.  After the attack, Berry walked to the school and notified police.  Berry was taken to the hospital where Detective Steven G. Milefsky ("Milefsky") took her statement.  Dr. Val Chapman ("Dr. Chapman") examined Berry and used a physical evidence recovery kit ("PERK") to collect specimens for evidence.  Dr. Chapman then gave the PERK to Milefsky.

_____

[1] Justice Lacy participated in the hearing and decision of this case prior to the effective date of her retirement on August 16, 2007.

Milefsky took the PERK he received from Dr. Chapman to the Virginia Forensic Laboratory in Fairfax County (the "laboratory") and gave the PERK to a clerk at the laboratory. On July 25, 1991, Karen C. Ambrozy ("Ambrozy"), a forensic scientist employed by the Commonwealth of Virginia's Division of Forensic Science obtained the PERK. Ambrozy received the PERK from another person working in the laboratory's forensic biology section. Ambrozy analyzed and conducted DNA analysis on vaginal swabs contained in the PERK. On January 9, 1992, Milefsky picked the PERK up from a clerk at the laboratory and returned it to the Fairfax County police property room (the "police property room").

In 2001, Milefsky took the PERK to the laboratory and again left it with one of the laboratory clerks. During the time the PERK was at the laboratory in 2001, Ambrozy conducted more DNA analysis. As part of the process, Kari Yoshida ("Yoshida"), a laboratory technician, prepared the product gel as part of the process for Ambrozy to determine if she had obtained any amplified DNA. Then, on September 4, 2001, Milefsky picked the PERK up from the laboratory and returned it to the police property room.

From 1991 to 2003, Berry's case was not investigated. In early 2003, Angel M. Anderson ("Anderson") was arrested in Stafford County on unrelated charges of rape and sodomy.

2

Pursuant to Code § 19.2-310.2:1, a sample of Anderson's DNA was taken upon his arrest and entered into a DNA databank. Upon entry into the DNA databank, a routine analysis resulted in a "cold hit" that appeared to match Angel's DNA to that found in Berry's PERK.

In December of 2003, Milefsky received a certificate of analysis from the laboratory preliminarily identifying Anderson as a possible suspect in Berry's attack. As a result of the investigative lead provided by the certificate of analysis, on January 6, 2004, Milefsky went to Stafford County to serve Anderson with a search warrant. The search warrant permitted a sample of Anderson's DNA to be obtained "by means of buccal (cheek) swabs in sufficient quantity to obtain laboratory results."

Pursuant to the search warrant, Milefsky obtained two buccal swabs from Anderson and took them to the laboratory along with Berry's PERK. Ambrozy compared the buccal swabs taken from Anderson with the DNA found in the PERK. Milefsky then received a certificate of analysis prepared by Ambrozy which stated that the sperm fraction from the vaginal swabs taken from Berry were "consistent with the DNA profile of Angel M. Anderson."

On March 15, 2004, the case was presented to the grand jury which indicted Anderson for the rape, robbery, and sodomy

3

of Berry.  At trial, a jury found Anderson guilty on all counts, and the trial court imposed the recommended two life terms plus ten years.  Anderson appealed to the Court of Appeals, where his convictions were affirmed.  Anderson v. Commonwealth, 48 Va. App. 704, 718, 634 S.E.2d 372, 379 (2006).  Anderson appeals to this Court upon two assignments of error:

1.   The Court of Appeals erred when [it] held that it is not a Constitutional violation to seize Mr. Anderson's DNA, pursuant to Va. Code § 19.2-310.2:1, upon arrest for an unrelated felony.

2.   The Court of Appeals erred by holding that the presenting of DNA evidence did not violate Mr. Anderson's Constitutional right of confrontation.

II.  Analysis

A.  The DNA Sample

Anderson first argues that the Court of Appeals erred when it held that it was not a constitutional violation to seize Anderson's DNA, pursuant to Code § 19.2-310.2:1, upon arrest for an unrelated felony.  Code § 19.2-310.2:1 states in relevant part that:

> Every person arrested for the commission or attempted commission of a violent felony as defined in § 19.2-297.1 or a violation or attempt to commit a violation of § 18.2-31, 18.2-89, 18.2-90, 18.2-91, or 18.2-92, shall have a sample of his saliva or tissue taken for DNA (deoxyribonucleic acid) analysis to determine identification characteristics specific to the person.

4

This Court as well as the United States Court of Appeals for the Fourth Circuit has held that Code § 19.2-310.2, requiring a convicted felon to provide a blood, saliva, or tissue sample for DNA analysis, does not violate the Fourth Amendment. Jones v. Murray, 962 F.2d 302, 308 (4th Cir. 1992); Johnson v. Commonwealth, 259 Va. 654, 672, 529 S.E.2d 769, 779 (2000). While Code § 19.2-310.2:1 requires a DNA sample after an arrest for specific offenses, as opposed to a conviction, like Code § 19.2-310.2, it too does not violate the Fourth Amendment.

Upon arrest, the accused is subjected to a routine booking process, including the taking of fingerprints. A DNA sample of the accused taken upon arrest, while more revealing, is no different in character than acquiring fingerprints upon arrest.

> [W]hen a suspect is arrested upon probable cause, his identification becomes a matter of legitimate state interest and he can hardly claim privacy in it. We accept this proposition because the identification of suspects is relevant not only to solving the crime for which the suspect is arrested, but also for maintaining a permanent record to solve other past and future crimes. This becomes readily apparent when we consider the universal approbation of "booking" procedures that are followed for every suspect arrested for a felony, whether or not the proof of a particular suspect's crime will involve the use of fingerprint identification.

5

Jones, 962 F.2d at 306.  Like fingerprinting, the "Fourth Amendment does not require an additional finding of individualized suspicion" before a DNA sample can be taken. Id. at 306-07.

The analogous treatment of the taking of DNA samples to the taking of fingerprints has been widely accepted.  In addition to the Fourth Circuit in the Jones case, the Second Circuit held "[t]he collection and maintenance of DNA information, while effected through relatively more intrusive procedures such as blood draws or buccal check swabs, in our view plays the same role as fingerprinting."  Nicholas v. Goord, 430 F.3d 652, 671 (2d Cir. 2005), cert. denied, 549 U.S. ___, 127 S.Ct. 384 (2006).  The Third Circuit held that "[t]he governmental justification for [DNA] identification . . . relies on no argument different in kind from that traditionally advanced for taking fingerprints and photographs, but with additional force because of the potentially greater precision of DNA sampling and matching methods."  United States v. Sczubelek, 402 F.3d 175, 185-86 (3d Cir. 2005), cert. denied, 549 U.S. ___, 126 S.Ct. 2930 (2006).  The Ninth Circuit said "[t]hat the gathering of DNA information requires the drawing of blood rather than inking and rolling a person's fingertips does not elevate the intrusion upon the plaintiffs' Fourth Amendment interests to a

6

level beyond minimal." Rise v. State, 59 F.3d 1556, 1560 (9th Cir. 1995).

Some state appellate courts have also concluded that DNA samples should be treated like fingerprints. See State v. Raines, 857 A.2d 19, 33 (Md. 2004) ("The purpose [of the DNA profile] is akin to that of a fingerprint. As such, appellee and other incarcerated individuals have little, if any, expectation of privacy in their identity."); State v. O'Hagen, 914 A.2d 267, 280 (N.J. 2007) ("We harbor no doubt that the taking of a buccal cheek swab is a very minor physical intrusion upon the person . . . . [T]hat intrusion is no more intrusive than the fingerprint procedure and the taking of one's photograph that a person must already undergo as part of the normal arrest process."); and State v. Brown, 157 P.3d 301, 303 (Or. Ct. App. 2007) ("Because [using a swab to take a DNA sample from the mucous membrane of an arrestee's cheek] is akin to the fingerprinting of a person in custody, we conclude that the seizure of defendant's DNA did not constitute an unreasonable seizure under [the Constitution.]").

Fingerprinting an arrested suspect has long been considered a part of the routine booking process. Similarly, the taking of a DNA sample by minimally intrusive means "is justified by the legitimate interest of the government in knowing for an absolute certainty the identity of the person

7

arrested, in knowing whether he is wanted elsewhere, and in ensuring his identification in the event he flees prosecution."  3 Wayne R. LaFave, Search and Seizure § 5.3(c), at 168 (4th ed. 2004).

Anderson argues that the saliva samples taken from him upon his arrest in Stafford County led to the "cold hit" implicating him in the offenses involved in this appeal.  He maintains that the taking of saliva was a "suspicionless" seizure[2] contrary to the Fourth Amendment and that all evidence flowing from such a search must be suppressed as "fruit of the poisonous tree."  Wong Sun v. United States, 371 U.S. 471, 484-85 (1963).  In support of his argument, Anderson cites City of Indianapolis v. Edmond, 531 U.S. 32, 47 (2000), wherein the Supreme Court of the United States held that "[w]hen law enforcement authorities pursue primarily general crime control purposes at checkpoints . . . stops can only be justified by some quantum of individualized suspicion."

Further, Anderson relies upon Ferguson v. City of Charleston, 532 U.S. 67 (2001), for the proposition that searches conducted for general law enforcement purposes cannot

_____

[2] While Anderson refers to the taking of buccal swabs as a "seizure," it is more appropriately referred to as a "search." Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 616-17 (1989); Cupp v. Murphy, 412 U.S. 291, 295 (1973); Schmerber v. California, 384 U.S. 757, 767-68 (1966).  See also United States v. Amerson, 483 F.3d 73, 77 (2d Cir. 2007).

be excepted from requirements of probable cause. Ferguson involved a cooperative program between hospital authorities and law enforcement officers to gather evidence of pregnant women using illegal drugs. Id. at 69-73. The analysis used by the Court focused upon a line of cases comprising the so-called "special needs doctrine" justifying suspicionless searches in narrowly defined circumstances.[3] The Court, in Ferguson, rejected the argument that the cooperative program between hospital personnel and law enforcement officers met the test of the "special needs doctrine." Id. at 84.

Anderson's reliance upon Edmond and Ferguson is misplaced. As previously established, the taking of a DNA sample pursuant to § 19.2-310.2:1 is permissible as a part of routine booking procedures. As such, no "additional finding of individualized suspicion" much less probable cause, must be established before the sample may be obtained. Jones, 962 F.2d at 306.

In Jones, the court held that pursuant to Code § 19.2-310.2 "in the case of convicted felons who are in custody of the Commonwealth, . . . the minor intrusion caused by the

---

[3] Such circumstances include public schools, public employment, and pervasively regulated industries. See, e.g., Board of Educ. v. Earls, 536 U.S. 822 (2002); National Treasury Employees Union v. Von Raab, 489 U.S. 656 (1989); Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602 (1989).

taking of a [DNA] sample is outweighed by Virginia's interest

. . . in determining inmates' 'identification characteristics

specific to the person' for improved law enforcement."[4]  962

F.2d at 307.  We hold that the same rationale holds true for

persons "arrested for the commission or attempted commission

of a violent felony" under Code § 19.2-310.2:1.  In

conclusion, we hold that the taking of Anderson's DNA sample

upon arrest in Stafford County pursuant to Code § 19.2-310.2:1

is analogous to the taking of a suspect's fingerprints upon

arrest and was not an unlawful search under the Fourth

Amendment.

### B.    Confrontation Clause

Anderson next argues that the "Court of Appeals erred by

holding that the presenting of DNA evidence did not violate

[his] [c]onstitutional right of confrontation."  This

assignment of error is limited to the objection made at trial.

Rule 5:25.  At trial, when the Commonwealth sought to

introduce the certificate of analysis that linked Anderson to

Berry's attack, Anderson's counsel stated:

> I still have an objection to the chain of
> evidence because I believe that Crawford comes
> into play now and we have a right to cross

---

[4] Anderson does not assign error to the Court of Appeals'
holding that he "does not challenge the specific manner in
which his DNA sample was taken or the nominal degree of
physical invasiveness it may have involved."  Anderson, 48 Va.
App. at 710, 634 S.E.2d at 375.

10

examine anyone who – under Crawford, Your Honor,
our contention of [Code § 19.2-]187[.01] becomes
unconstitutional because we don't have the right
– there shouldn't be a presumption afforded a
document that is testimonial in nature.

Based on this objection, Anderson argues that his constitutional right of confrontation was violated upon admission of the certificate of analysis linking Anderson to Berry's attack and the statutory presumption contained in Code § 19.2-187.01 providing that the duly attested report of analysis "shall be prima facie evidence in a criminal or civil proceeding as to the custody of the material described therein from the time such material is received by an authorized agent of such laboratory until such material is released subsequent to such analysis or examination."

The Confrontation Clause guarantees an accused the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. Recently, the Supreme Court of the United States has held: "Where testimonial evidence is at issue, . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." Crawford v. Washington, 541 U.S. 36, 68 (2004). Since Crawford, a significant inquiry in Confrontation Clause cases has been whether the hearsay evidence sought to be admitted into evidence was testimonial in nature and consequently, subject to Confrontation Clause requirements.

11

In this case, the statement in question was the certificate of analysis.  However, Ambrozy was the author of the certificate of analysis, appeared at trial in person, testified as to its contents, and Anderson had the opportunity to cross-examine her.

Code § 19.2-187.01 states in relevant part:

> A report of analysis duly attested by the person performing such analysis or examination in any laboratory operated by . . . the Department of Forensic Science or any of its regional laboratories . . . <u>shall be prima facie evidence in a criminal or civil proceeding as to the custody of the material described therein from the time such material is received by an authorized agent of such laboratory until such material is released subsequent to such analysis or examination</u>. Any such certificate of analysis purporting to be signed by any such person shall be admissible as evidence in such hearing or trial without any proof of the seal or signature or of the official character of the person whose name is signed to it. The signature of the person who received the material for the laboratory on the request for laboratory examination form shall be deemed prima facie evidence that the person receiving the material was an authorized agent and that such receipt constitutes proper receipt by the laboratory for purposes of this section.

(Emphasis added).  Code § 19.2-187.01 contains a presumption that the Department of Forensic Science maintained a proper chain of custody at all times while the samples were in its possession.  Code § 19.2-187.01 states that a "duly attested" "report of analysis" shall be "prima facie evidence" as to the custody of the material while it is in the laboratory.  The

12

effect of a prima facie showing under this statute is to create a "presumption." See e.g., Martin v. Moore, 263 Va. 640, 645-46, 561 S.E.2d 672, 676 (2002) ("This presumption of a grant or adverse right is prima facie only and may be rebutted by evidence to the contrary."). Anderson challenges the presumption in Code § 19.2-187.01 regarding the chain of custody of the DNA evidence.

A challenge to the presumption afforded by Code § 19.2-187.01 focuses upon the admissibility of the evidence. "[A] chain of custody is properly established when the Commonwealth's evidence affords reasonable assurance that the exhibits at trial are the same and in the same condition as they were when first obtained." Vinson v. Commonwealth, 258 Va. 459, 469, 522 S.E.2d 170, 177 (1999). Whether the foundation is sufficient to properly establish the chain of custody is a question within the sound discretion of the trial court. Essex v. Commonwealth, 228 Va. 273, 285, 322 S.E.2d 216, 223 (1984).

What Anderson contests is the presumption of regularity regarding the custody of the material described in the certificate "from the time such material is received by an authorized agent of such laboratory until such material is released subsequent to such analysis or examination." Code

13

§ 19.2-187.01.  Such a challenge is to the admissibility of the evidence, and not to the substance of the evidence itself.

In Crawford, the Supreme Court relied upon the text of an 1828 dictionary to define "witnesses" against the accused as those who "bear testimony," and "testimony" as "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact."  541 U.S. at 51 (citing 2 N. Webster, An American Dictionary of the English Language (1828)).  To the extent that Anderson challenges the content of the certificate, Anderson has suffered no Confrontation Clause violation because it was the subject of testimony by the author who was available for cross-examination.  See Crawford, 541 U.S. at 62, 68 and id. at 59 n.9 (citing California v. Green, 399 U.S. 149, 162 (1970)).  Furthermore, Anderson has no Confrontation Clause violation regarding the presumption afforded by Code § 19.2-187.01 because the presumption is not testimonial in nature.  Simply stated, the evidentiary presumption regarding chain of custody is relevant to the admissibility of the evidence.  It is the substance of the evidence, namely the content of the certificate, that is a "solemn declaration or affirmation made for the purpose of establishing or proving some fact" accusatory to Anderson.[5]

_____

[5] The Colorado Court of Appeals in a case involving proof of prior conviction held, "the affidavits at issue here were

14

The presumption afforded by Code § 19.2-187.01 is not testimonial in nature. The content of the certificate was the subject of testimony by its author who was subject to cross-examination. Anderson's right of confrontation under the Sixth Amendment was not violated.

### III. Conclusion

For the reasons stated, we will affirm the judgment of the Court of Appeals.

<u>Affirmed</u>.

---

provided solely to verify the chain of custody and authenticity of the underlying documentary evidence. It is the underlying documentary evidence, and not the authenticating affidavits, that reference (and are thus used to prove) the facts material to habitual criminal proceedings, namely, a defendant's prior convictions." <u>People v. Schreck</u>, 107 P.3d 1048, 1060-61 (Colo. Ct. App. 2004).