SHEPHERD, J.
Christopher Myles appeals his convictions for sexual battery with a knife in violation of section 794.011(3) of the Florida Statutes (2001), kidnapping with a knife in violation of section 787.01 of the Florida Statutes (2001), and two counts of lewd and lascivious molestation on a child twelve to sixteen (12-16) years of age in violation of section 800.04(5) of the Florida Statutes (2001). Myles argues the trial court erred by denying his motion to suppress sample DNA swabs obtained while Myles was in temporary police custody on an unrelated matter, which ultimately cascaded into his arrest and convictions in this case, on the ground that his consent to the taking of the swabs was involuntary under the circumstances, and also by denying his request for a special jury instruction. Finding no error, we affirm the convictions.
On January 29, 2001, the police were called to investigate a sexual battery upon the victim, S.P. The victim testified she was walking to her school bus stop in the early morning when a man approached her from behind, grabbed her at knifepoint, and took her to an abandoned house. In the house, the perpetrator removed his clothing, and made the victim remove hers. The perpetrator laid on top of the victim, kissing her lips and breast. The victim testified she felt something wet on her vagina, like flesh, but there was no penetration. Startled by a neighbor’s shout, the perpetrator fled. When the police arrived, a crime scene technician swabbed the victim’s mouth and breast for DNA. The victim was unable to distinguish any features of the perpetrator, except for a general description that he was a black man bigger than she was. The lead that resolved the crime finally materialized on October 30, 2003, almost three years later.
On that date, the defendant, Myles, was stopped by City of Miami police in the early hours of the morning while driving his vehicle on Biscayne Boulevard, purportedly for “some dispute with a female.” Believing Myles looked sufficiently like the sketch of a suspect colloquially referred to as the “North Dade Rapist,” the officers called Miami-Dade County DNA swab detail detectives, Curtis Lueck and Roger Irving, to the scene. The detail detectives had been tasked with seeking voluntary DNA swabs “from people in the area where the offense occurred” in order to “eliminate them [from] the investigation” as the “North Dade Rapist.”
When the detectives arrived at the scene, the defendant was sitting in the back of a police car with handcuffs. Detective Lueck testified he advised the defendant they were investigating a series of sexual assaults and wanted to obtain a voluntary DNA swab from the defendant to “eliminate him” as a suspect. After the defendant agreed, he was removed from the car and his handcuffs were taken off. Detective Lueck read aloud the consent form to the defendant, and the defendant signed it. The defendant conducted the swabbing himself, taking two oral swabs from each side of his mouth.
*511 Although the DNA swabs eliminated the defendant as the “North Dade Rapist,” the Florida Department of Law Enforcement conducted a routine comparison of the defendant’s DNA with DNA stored in the State Index Data Bank for unsolved crimes. This resulted in two “cold hits” for unsolved rapes in Miami-Dade County, one of which was of the victim in this case. Based upon this information, Miami-Dade County police arrested Myles and took him to the police station, where he signed a second consent form for confirmatory DNA swabs. These swabs again matched the DNA found on the victim’s body.
Prior to trial, the defendant moved, in separate motions, to suppress each of the DNA swabs. As to the first DNA swabs obtained on Biscayne Boulevard, Myles argued his consent was not freely and voluntarily given, thus any evidence obtained after that date would be “fruit of the poisonous tree.” See Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The defendant testified he felt he had no choice but to do what the police asked, because there were approximately ten officers at the scene and he previously had been the victim of police brutality. Detective Lueck testified he could only recall five police officers at the scene, including his partner and him. Detective Lueck further testified he read the consent form to the defendant and the defendant freely and voluntarily signed it. He testified the defendant was neither threatened nor coerced, and if Myles had declined to sign the consent form, he simply would have departed the scene. The trial court denied the motion, finding, by a preponderance of the evidence, the defendant read the consent form, understood it, and signed it voluntarily.
When reviewing a motion to suppress evidence, “the appellate court affords a presumption of correctness to a trial court’s findings of fact but reviews de novo the mixed questions of law and fact that arise in the application of the historical facts to the protections of the Fourth Amendment.” Wyche v. State, 987 So.2d 23, 25 (Fla.2008). In determining whether a person voluntarily has consented to a search, the State has the burden of proving the consent was freely and voluntarily given by a preponderance of the evidence. See Taylor v. State, 855 So.2d 1, 17 (Fla.2003). Moreover, the officer’s conduct is evaluated objectively under the standard of a reasonable innocent person, rather than the subjective evaluation of one with the defendant’s state of mind. See Florida v. Bostick, 501 U.S. 429, 438, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (quoting Florida v. Royer, 460 U.S. 491, 519 n. 4, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (Blackmun, J. dissenting)). “This reasonable person standard ... ensures that the scope of [the] Fourth Amendment protection does not vary with the state of mind of the particular individual being approached.” Bostick, 501 U.S. at 438, 111 S.Ct. 2382, 115 L.Ed.2d 389 (quoting Michigan v. Chesternut, 486 U.S. 567, 574, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988)). In reaching the decision in this case, the trial court appears to have given some consideration to the defendant’s testimony concerning his past experiences with the police. This, of course, could inure only to the defendant’s benefit. Upon de novo review, we affirm the trial court’s denial of the defendant’s motion to suppress the first DNA swabs.
As to the second DNA swabs obtained after Myles’ arrest on December 15, 2005, Myles advances the categorical argument that a cold DNA hit “does not constitute probable cause to arrest [a] defendant,” thus making the second DNA swabs inadmissible. We disagree.
*512 Identification by a DNA match is analogous to identification by a fingerprint match. See, e.g., Anderson v. Commonwealth, 274 Va. 469, 650 S.E.2d 702, 705 (2007) (“The analogous treatment of the taking of DNA samples to the taking of fingerprints has been -widely accepted.”) (collecting cases). This Court has held that “[t]he comparison of latent prints and known prints already on file provides sufficient probable cause for a warrantless arrest thereby rendering admissible any evidence derived as a result of such an arrest.” State v. Roque, 809 So.2d 50, 51 (Fla. 3d DCA 2002). The latent prints in Roque were obtained from a cigarette carton found within a burglarized home, thus establishing the defendant’s unauthorized presence within that home. Id. at 50. Here, analogous to the “latent prints” is the DNA evidence obtained from sample swabs performed on the victim’s mouth and breast, establishing illegal contact. The first set of DNA swabs, legally taken from the defendant at the Biscayne Boulevard encounter, equate to the “known prints on file,”[1] thereby establishing a DNA match in this case sufficient to create probable cause to arrest the defendant. See State v. Cortez, 705 So.2d 676, 678 (Fla. 3d DCA 1998) (“Probable cause to arrest exists when the totality of the facts and circumstances within the officer’s knowledge would cause a reasonable person to believe that an offense has been committed and that the defendant is the one who committed it.” (citations omitted)). Because the arrest was legal in this case, the second DNA swabs were admissible.[2]
Lastly, the defendant argues the trial court erred in failing to give the defendant’s special jury instruction defining the word vagina. The defendant was charged with sexual battery by union, and the trial court provided the standard jury instruction that: “Christopher Myles committed an act upon S.P. in which the sexual organ of Christopher Myles penetrated or had union with the vagina of S.P.” § 794.011(l)(h), Fla. Stat. (2001). The defendant claims the element of penile union with the victim’s vagina was a critical element in dispute because the victim testified there was no penetration, but that she felt something wet and fleshy on her. The defendant requested a special jury instruction on the dictionary definition of vagina as the canal between the vulva and the uterus. As the First District Court of Appeal has observed in Bowden v. State, 642 So.2d 769, 770 (Fla. 1st DCA 1994):
Given the strict medical definition of vagina, the only way the vagina could be reached is through penetration. However, the statute defining sexual battery provides for “vaginal penetration by, or union with, the sexual organ of anoth-
[It] is clear that the Legislature intended that “union” mean something other *513 than penetration.... [C]ontact alone, between the sexual organ of the offender and the mouth, anus, or vagina of the victim, is sufficient to convict.
(citations omitted). In finding the standard jury instruction on sexual battery was sufficient to apprise the jury of the law, the trial court did not abuse its discretion.
Affirmed.

. The defendant is mistaken in his argument that these standards cannot be used to establish probable cause because they were not properly authenticated at the hearing on the motion to suppress. Hearsay can be used to establish probable cause to arrest, even if it may not be used at trial. Hayward v. State, 24 So.3d 17, 37 (Fla.2009); see also Draper v. United States, 358 U.S. 307, 312 n. 4, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) (“It is well settled that an arrest may be made on hearsay evidence; and indeed, the 'reasonable cause' necessary to support an arrest cannot demand the same strictness of proof as the accused’s guilt upon a trial, unless the powers of peace officers are to be so cut down that they cannot possibly perform their duties.”) (quoting United States v. Heitner, 149 F.2d 105, 106 (2nd Cir.1945) (Learned Hand, J.)).

. Myles fleetingly argues his written consent to the taking of the second DNA swabs also was not freely and voluntarily given. We find no merit to this contention.