COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges Petty and Huff
Argued at Richmond, Virginia

PUBLISHED

JEFFREY SCOTT HAAS

v.        Record No. 0621-18-2

COMMONWEALTH OF VIRGINIA

OPINION BY
CHIEF JUDGE MARLA GRAFF DECKER
OCTOBER 29, 2019

FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Edward A. Robbins, Jr., Judge

Craig S. Cooley for appellant.

Eugene Murphy, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.

Jeffrey Scott Haas appeals his convictions for rape and indecent liberties with a minor in

violation of Code §§ 18.2-61 and 18.2-370.1.  On appeal, he challenges two of the trial court's

evidentiary rulings.  First, he contends that the court erred by excluding evidence through which he

sought to impeach the credibility of the complaining witness.  Second, he argues that the court erred

by admitting evidence of his refusal to provide a DNA sample pursuant to a search warrant.  We

hold that the court's rulings on these evidentiary matters were not error on the record before us.

Consequently, we affirm the appellant's convictions

I.  BACKGROUND[1]

The offenses that are the subject of this appeal involved S.D., a girl who was fifteen and

sixteen years old at the time of the crimes.  The appellant was an acquaintance of S.D.'s mother.

---

[1] On appellate review of issues involving the admissibility of evidence, the Court views
the evidence in the light most favorable to the Commonwealth as the party who prevailed below.
See Lynch v. Commonwealth, 46 Va. App. 342, 350 (2005), aff'd, 272 Va. 204 (2006).

The mother socialized with the appellant and trusted him to "watch" her children while she was working, attending school, or going out for the evening. S.D. reported the offenses to her mother, who in turn notified the police.

At the appellant's jury trial, the Commonwealth presented testimony from numerous witnesses including S.D. and her mother. It also presented DNA evidence linking the appellant to semen found on the sheets of S.D.'s mother's bed, where S.D. said one of the crimes took place. The appellant testified and denied S.D.'s allegations, claiming instead that he had two sexual encounters with S.D.'s mother rather than S.D. The jury disbelieved the appellant's denials with regard to the rape and indecent liberties and convicted him of those offenses. He was sentenced to eighteen years in prison for the rape and five years for the indecent liberties.

## II. ANALYSIS

The appellant challenges the trial court's rulings on two evidentiary issues. First, he argues that the court erred by excluding evidence of statements that S.D. allegedly made to her aunt, which he contends were relevant to the jury's assessment of S.D.'s credibility. Second, the appellant suggests that the court erred by admitting evidence that he refused to submit to the seizure of his DNA pursuant to a search warrant because the court told him that his compliance was not required.

### A. Standard of Review

"Appellate courts review evidentiary rulings under an abuse of discretion standard." Campos v. Commonwealth, 67 Va. App. 690, 702 (2017) (quoting Boone v. Commonwealth, 63 Va. App. 383, 388 (2014)). This "deferential standard" means that "a 'trial judge's ruling will not be reversed simply because an appellate court disagrees.'" Id. (quoting Thomas v. Commonwealth, 44 Va. App. 741, 753, adopted upon reh'g en banc, 45 Va. App. 811 (2005)). Only in those cases in which "reasonable jurists could not differ" does the record support the conclusion that an abuse of discretion has occurred. Thomas, 44 Va. App. at 753.

When a party seeks to admit evidence, if "inquiry is made by the trial judge concerning the purpose of evidence" or the opposing party makes "a specific objection," "the proponent of the evidence has the burden of establishing its admissibility." Neal v. Commonwealth, 15 Va. App. 416, 420 (1992), cited with approval in Creamer v. Commonwealth, 64 Va. App. 185, 194-95 (2015). "The measure of the burden of proof with respect to factual questions underlying . . . admissibility . . . is proof by a preponderance of the evidence." Bloom v. Commonwealth, 262 Va. 814, 821 (2001) (quoting Witt v. Commonwealth, 215 Va. 670, 674 (1975)). The "trial court determines these facts" as part of its decision regarding whether to admit or exclude proffered evidence. Id. Such subsidiary findings are binding on appeal "unless 'plainly wrong' or without evidence to support them." Campos, 67 Va. App. at 702 (quoting McGee v. Commonwealth, 25 Va. App. 193, 198 (1997) (*en banc*)). However, to the extent that the admissibility determination involves a question of law, the appellate court reviews that issue *de novo*. Beckham v. Commonwealth, 67 Va. App. 654, 658 (2017); see John Crane, Inc. v. Jones, 274 Va. 581, 586-87 (2007). Finally, an appellant bears the burden of providing the appellate court with authority and argument in support of his request for reversal. See Bartley v. Commonwealth, 67 Va. App. 740, 744-45 (2017).

It is under these well-established principles that we review the appellant's assignments of error.

B. Exclusion of the Complaining Witness' Alleged Prior Statements About Lying

The appellant argues that the trial court erred by excluding what he describes as "direct evidence" of the complainant's credibility. That evidence is a group of alleged statements S.D. made to her aunt including that S.D. "had lied to the police before and would lie again about being sexually assaulted," statements that referenced two men other than the appellant.

1. Relevant Factual Framework

At trial, the appellant sought to offer testimony from S.D.'s maternal aunt in an effort to impeach S.D. The Commonwealth objected to the admission of the aunt's testimony. In light of the objection, the judge heard her testimony outside the presence of the jury.

The aunt testified that during 2015, S.D.'s mother and two daughters, including S.D., resided with her. In July of that year, the aunt told the mother that she needed to "g[e]t her own place" and gave the mother several months to do so. According to the aunt, S.D.'s mother "got very upset and started screaming" at her. The aunt said that S.D. then informed her, "If you don't let my mom do what she wants to do, then I'll just go and say that Scott, . . . [the aunt's] boyfriend at the time, put his hands on me [or touched me]." The aunt said that she asked S.D. why she would "tell a lie like that to the police" because Scott had "never been with them by himself." The aunt further testified that S.D. responded, "Well, I've done it before. I'll do it again." S.D. also said "that her mom could take her to the magistrate and that would be the end of it." S.D.'s aunt then asked about a former boyfriend of S.D.'s mother, about whom the aunt said S.D. had also made a prior accusation, saying, "So you're telling me that Chad never touched you, that you lied about that?" The aunt testified that S.D. replied, "Well, that's none of your business, but if I did lie[,] I'm getting away with it."

The judge ruled that the statements were inadmissible because they did not qualify as a prior false accusation of sexual misconduct.[2] The appellant objected to the exclusion. He argued

---

[2] In ruling on this issue, the judge referenced the holding in <u>Clinebell v. Commonwealth</u>, 235 Va. 319 (1988), and divided his analysis into three parts. First, he noted that a threshold question for the admissibility of a statement as a prior false accusation is whether "there [is] a reasonable probability that it is false." The judge further stated that it was "impossible" for him "to conclude to a reasonable probability based upon all the evidence presented that [S.D.'s alleged] statement was false." Second, he determined that the aunt was "not a disinterested person within the meaning of <u>Clinebell</u>." This was so, he reasoned, because S.D.'s alleged statements were about "someone with whom [the aunt] had a relationship that was of such gravity that she's now married to the man." The judge also did "not conclude . . . that the

that analyzing admissibility under the prior false statement rubric was error and repeatedly disclaimed any effort to have the statements admitted under that theory. He insisted that S.D.'s alleged assertions were admissible as "affirmative evidence" of her willingness to lie and the fact that they were made in reference to "an alleged sexual abuse" was merely incidental. He contended that he was entitled to have the aunt's "credibility . . . judged by the trier of fact." The appellant argued that in the context of the aunt's question—"[W]hy [would you] lie like that to the police[?]"—the "response" that "I did it before and I will do it again" *must* "mean[] . . . lying." He further asserted that the judge, by refusing to admit S.D.'s statements, was finding that the statements "couldn't possibly mean [a] lie," thereby depriving the jury of "the opportunity to make their own decisions" about the evidence. The judge again ruled that the proffered testimony was inadmissible.[3]

### 2. Merits Analysis of Exclusion of Proffered Impeachment Testimony

The appellant argues that the trial court erred in refusing to admit evidence that S.D. allegedly told her aunt that she had previously lied to police about being sexually assaulted by a third party and would lie again on the subject of sexual assault. Although the appellant does not rely on any specific rule of evidence to support his general argument regarding impeachment, we review his challenge in the context of the rules.

### a. Overview of Permissible Impeachment

The applicable legal principles concerning impeachment are largely outlined in Virginia's Rules of Evidence. See generally Va. R. Evid. 2:102 ("These Rules state the law of evidence in

---

assertion of [S.D.] was that she was going to lie." He held that "[a]bsent that assertion, there's nothing to confront."

[3] In light of the court's exclusion of the aunt's proffered testimony, the appellant proffered additional evidence, by joint stipulation, that if the appellant had been permitted to confront S.D. with her alleged statements to her aunt about having lied before and being willing to lie again, S.D. would have denied making those statements.

Virginia. . . . As to matters not covered by these Rules, the existing law remains in effect."). The language of Rule of Evidence 2:607(a) is broadly worded, stating that "[i]n [g]eneral," "the credibility" of an opposing party's "witness may be impeached . . . with any proof that is relevant to the witness's credibility." It lists a variety of specific ways that "[i]mpeachment may be undertaken." Va. R. Evid. 2:607(a). Those methods include introducing evidence of the witness' "bad general reputation for the traits of truth and veracity" and any "bias[] for or prejudice[] against a party." Va. Rs. Evid. 2:607(a)(i), (v), 2:610. In addition, the rule provides that a witness may be impeached by evidence that contradicts her testimony and "any other evidence which is probative on the issue of credibility because of a logical tendency to convince the trier of fact that the witness's perception, memory, or narration is defective or impaired, or that the sincerity or veracity of the witness is questionable."[4] Va. R. Evid. 2:607(a)(vii)-(viii); see also Kent Sinclair, The Law of Evidence in Virginia § 12-2[a], at 670 (8th ed. 2018) (noting that the rule provides "an excellent summary" of available impeachment methods). We consider these methods in turn.

b. Evaluation of Specific Methods of Impeachment

We examine the appellant's suggestion that the proffered testimony of the aunt should have been admitted to impeach S.D.'s credibility under the rules covering impeachment through evidence of reputation, bias, and contradiction.

---

[4] Rule 2:607 recognizes four additional methods of impeachment. Two of them are proof of a prior criminal conviction and a prior inconsistent statement. See Va. R. Evid. 2:607(ii), (vi). These methods were not discussed in the trial court, and the appellant does not suggest on appeal that either of these methods supports his claim that the challenged testimony was admissible. See Bartley, 67 Va. App. at 744-45; Neal, 15 Va. App. at 422. Accordingly, we do not consider these theories of admissibility. The other two methods of impeachment involve prior unadjudicated perjury and prior false accusations of sexual misconduct. See Va. R. Evid. 2:607(a)(iii)-(iv). As discussed *infra* in footnote 5 and the accompanying text, the unadjudicated perjury exception is inapplicable, and the appellant specifically disclaims reliance on the prior false accusations exception recognized in Clinebell.

i. Reputation Evidence

Despite the expansive wording of Rule 2:607(a), Rule 2:608 significantly limits the types of evidence that may be used to challenge a witness' credibility. Rule 2:608(a) provides that "[t]he credibility of a witness may be attacked . . . by *evidence in the form of reputation*" regarding the "character trait for truthfulness or untruthfulness." Va. R. Evid. 2:608(a) (emphasis added); see also Va. R. Evid. 2:607(a)(i) (referencing Rule 2:608(a)-(b)). The rule conditions the admission on proof "that the person testifying has sufficient familiarity with the reputation to make the testimony probative." Va. R. Evid. 2:608(a). It further states that "[e]xcept as otherwise provided" in Rule 2:608, or "by other principles of evidence" or "statute," "(1) specific instances of the conduct of a witness may *not* be used to attack or support credibility; and (2) specific instances of the conduct of a witness may *not* be proved by extrinsic evidence." Va. R. Evid. 2:608(b) (emphases added); see Richardson v. Commonwealth, 42 Va. App. 236, 240 (2004); cf. Fed. R. Evid. 608 (like the Virginia rule, permitting impeachment with reputation evidence and prohibiting extrinsic evidence of "specific instances" of witness conduct but, unlike Virginia, also permitting impeachment with opinion evidence); United States v. Lollar, 606 F.2d 587, 588-89 (5th Cir. 1979) (recognizing that opinion under the federal rule is the belief of a single witness). Rule 2:608 provides exceptions permitting admission under certain circumstances, but those exceptions do not apply here.[5]

---

[5] The Rule's exception for prior unadjudicated perjury permits cross-examination of the witness on the subject, but it specifically provides that "[e]xtrinsic proof of the unadjudicated perjury may not be shown." Va. R. Evid. 2:608(d). Thus, the testimony of S.D.'s aunt was not admissible under this exception. Regarding the exception for prior false allegations of sexual misconduct, the appellant specifically disclaimed below that the statements should be analyzed through this lens. See Neal, 15 Va. App. at 420, 422. Additionally, in this Court, the appellant once again disclaims reliance on this rationale. See Bartley, 67 Va. App. at 744-45. Consequently, we do not consider this basis for admission.

The appellant frames the proffered testimony as "an affirmative statement by the complainant that she had 'lied before and [would] lie again,'" which merely happened to be made "in the context of an alleged sexual abuse." However, if viewed as a specific incident showing S.D.'s propensity to lie, the evidence was inadmissible because, except as otherwise provided by the rules, other principles of evidence, or statute, "specific instances of the conduct of a witness may not be used to attack or support credibility." See Va. R. Evid. 2:608(b)(1); Clinebell v. Commonwealth, 235 Va. 319, 323-24 (1988). Instead, Rule 2:608 provides that "impeaching the truthfulness of any witness . . . can only be done by *reputation* proof and not by cluttering the record with evidence of specific instances of that prior witness' lying or false behavior." Sinclair, supra, § 12-5[a], at 712 (emphasis added); see Clinebell, 235 Va. at 323-24 (recognizing impeachment by reputation and emphasizing that character generally may not be impeached by "specific acts of untruthfulness or bad conduct"); see also Va. R. Evid. 2:608(c) (permitting *cross-examination* of a character witness, who has testified about *another* witness' general *reputation* for veracity, about "[s]pecific instances of conduct . . . if probative of truthfulness or untruthfulness").

Further, the proffered testimony does not qualify as reputation evidence under Rule 2:608. Reputation, in the context of the rule, is "the impression [that] others have of [the witness] . . . *in the community where he or she lives or works*." Sinclair, supra, § 12-5[a], at 713-14. The appellant did not proffer testimony that S.D.'s general reputation for truthfulness in the community was bad. See generally id. at 712-13. He sought to admit only testimony about a single specific incident in which S.D. allegedly said to a particular individual that she had lied before and would lie again. However, admitting evidence of "reputation formed as a result of one single incident is not proper." See id. at 714 (citing McMinn v. Rounds, 267 Va. 277,

281-82 (2004)).  Consequently, the aunt's proffered testimony about S.D. was inadmissible as impeachment evidence based on the witness' general reputation.

### ii.  Bias and Contradiction

The other allowable methods of impeachment to consider in the context of this case are proof of bias and contradiction by other evidence.

The rule addressing bias permits impeachment by "showing that the witness is biased for or prejudiced against a party," and it authorizes the admission of "[e]xtrinsic evidence of such bias or prejudice."  Va. R. Evid. 2:610; see Cousins v. Commonwealth, 56 Va. App. 257, 272-73 (2010).  The appellant argues only that S.D.'s reply to her aunt was "an affirmative statement" that "she had 'lied before and [would] lie again.'"  This framing shows at most a willingness to lie rather than a bias or motive for doing so.  Thus, we do not further consider this possible basis for admission.

Impeachment by contradiction requires that the contradictory evidence must be independently admissible and not collateral to the material issues in the case.  See Va. R. Evid. 2:607(a)(vii); Sinclair, supra, § 12-8, at 730-32.  The appellant does not argue that the evidence was independently admissible; instead, he argues that it was admissible solely to attack S.D.'s credibility.

Even if we construe his assertion that the proffered testimony was "affirmative" or "direct" evidence to mean that he believed the evidence was independently admissible, the appellant has not articulated any basis other than credibility upon which he contends the evidence should have been admitted.  Additionally, he does not cite any Rules of Evidence or common law evidentiary principles to explain on what basis the proffered testimony was

independently admissible.[6] Consequently, we conclude that this method of impeachment does not support his claim of admissibility.

Because the appellant advances no method of impeachment that provides a basis for admitting the aunt's proffered testimony about S.D.'s alleged statements and, after a thorough review of the Rules of Evidence, we can find none, we hold that the trial court did not err in excluding that testimony.

C. Admissibility of Evidence of the Appellant's Refusal to Submit to DNA Testing

The appellant contends that the trial court erred by admitting evidence of his "refusal to submit to the seizure of his DNA under the theory that it showed a 'consciousness of guilt'" because "the court had previously suggested [that] compliance was at the voluntariness of the defendant."

1. Relevant Factual Framework Regarding DNA Sample

At trial, the Commonwealth sought to introduce evidence of the appellant's multiple refusals to provide a DNA sample. The appellant objected, arguing that the judge specifically advised him prior to the forcible taking that he had a constitutional right not to provide a DNA sample. He argued that in light of the judge's statement, his refusal to cooperate was irrelevant and inadmissible.

The record establishes the sequence of relevant events that occurred between February and May of 2017. In the course of this sequence, the Commonwealth sought to obtain a DNA sample from the appellant, the appellant repeatedly refused, and law enforcement ultimately forcibly obtained the sample with help from jail personnel.

---

[6] The four cases cited by the appellant in support of this assignment of error on brief do not alter this analysis. Three cover the basic abuse-of-discretion standard for reviewing the admissibility of evidence generally. The fourth case notes the equally basic general principle that the fact finder bears the responsibility for determining the credibility of witnesses and the weight to be given their testimony.

Detective Curtis Gunn of the Chesterfield County Police Department obtained a search warrant for the appellant's DNA on February 27. That warrant was valid for fifteen days. At a hearing that day on an unrelated matter, the prosecutor informed the court in the presence of the appellant and his attorney that the appellant "would not . . . volunteer" a DNA sample. According to the judge, although law enforcement had a search warrant permitting the taking of buccal swabs for DNA testing, "nobody bothered to tell the [judge]" that day that a search warrant had been issued. Consequently, because the judge was not aware of the warrant, he told the appellant that he did not "have to volunteer." When the detective attempted to collect buccal swabs pursuant to the warrant that day, the appellant refused. The judge, unaware of the existence of the warrant, continued the case until March 14 on the Commonwealth's motion.

On March 6, the Commonwealth filed a motion to compel the appellant to provide a DNA sample. At the hearing on March 14, the appellant and his attorney were present. The court granted the Commonwealth's motion to compel and "order[ed]" the appellant to "comply with the search warrant and submit to a buccal swab."

On March 20, Detective Gunn obtained a new search warrant, also good for fifteen days. He visited the appellant again on that date seeking a DNA sample pursuant to the warrant, but the appellant again refused to provide the sample.

On May 8, the parties appeared in court for a status hearing. Although the March 20 warrant had expired and Detective Gunn had not yet obtained a new one, the judge noted that a search warrant for the appellant's DNA had previously been issued. The prosecutor told the court that Detective Gunn had visited the appellant to obtain a sample on March 20 and was again "rebuffed" despite his presentation of a valid search warrant at that time. The appellant "ask[ed] the Court to withdraw the order." The judge replied that "the buccal swab . . . ha[d] been ordered as a result of a search warrant presented to a magistrate" rather than "to the

[c]ourt." He set a new "status date" of May 25 to "give the [appellant] an opportunity to comply." The judge said that "[i]f [the defendant] has [complied], then . . . the case moves forward."

On May 17, Detective Gunn obtained a third warrant for the appellant's DNA, and he and corrections officers again made the appellant aware that they had a valid search warrant authorizing them to take buccal swabs. When the appellant again refused to comply, the officers physically restrained him and forcibly took buccal swab DNA samples.

When the parties appeared in court for a status check on May 25, the appellant argued that he had "exercised his privilege . . . to decline to voluntarily [give] the DNA." He asserted that his "underst[anding] . . . was that that was his prerogative" and he was "basically keeping himself in [jail] until he complied." The judge told the appellant that he was improperly conflating two parts of the buccal swab issue. The judge noted that because he was not originally told that the initial search warrant had been issued, he informed the appellant that he did not have to provide a sample. The judge explained further, however, that within about two weeks of the original February 27 hearing, he was notified "that there was a search warrant in place," and he then "informed the [appellant] that he needed to comply with the search warrant."

At the appellant's trial, following the discussion of this sequence of events, the court ruled that the appellant's noncompliance with the warrant on February 27 was "excused" because the court, unaware of the existence of the warrant at that time, told him that his compliance was voluntary. Consequently, the court did not allow the Commonwealth to elicit testimony about the appellant's refusal in that time frame. However, the court also ruled that the appellant's refusals of March 20 and May 17 were admissible because, in the presence of the

appellant prior to those dates, on March 14, the court discussed the existence of the warrant

issued by the magistrate and entered an order compelling the appellant's compliance.[7]

2. Merits Analysis of Admission of Evidence of Refusal to Provide DNA Sample

The appellant argues that the trial court erred by admitting the evidence of his refusal to

submit a DNA sample because the trial judge had suggested that his compliance was optional.

Under these circumstances, he suggests that his refusal did not demonstrate a consciousness of

guilt.

Settled law characterizes the taking of buccal cheek swabs for purposes of DNA analysis

as a search akin to fingerprinting. See Anderson v. Commonwealth, 274 Va. 469, 474-77 & n.2

(2007). It further provides that when "a suspect is arrested upon probable cause," identifying

him by means of fingerprinting or buccal swabs for DNA analysis "becomes a matter of

legitimate state interest [in which] he can hardly claim [a] privacy [interest]." Id. at 474 (quoting

Jones v. Murray, 962 F.2d 302, 306 (4th Cir. 1992)). Additionally, it is well settled that the

resistance of a court order designed to determine whether evidence from a crime scene links a

defendant to that crime is admissible as circumstantial evidence probative of the defendant's

guilt. See Palmer v. Commonwealth, 14 Va. App. 346, 347-49 (1992) (upholding the admission

of evidence of the defendant's refusal to comply with a court order directing him to shave and

cut his hair in order to facilitate possible eyewitness identification because the refusal

"suggest[ed] an attempt at concealment"); cf. Jones v. Commonwealth, 279 Va. 52, 57-59 (2010)

(holding that the defendant's refusal to comply with a police officer's request to perform field

sobriety tests, *which were not required by statute or court order*, was inadmissible to show a

"consciousness of guilt" but, under appropriate circumstances, was probative "circumstantial

---

[7] The court mentioned a refusal of May 27 rather than May 17, but the record, viewed in context, makes clear that the judge misspoke, and the appellant does not contend otherwise.

- 13 -

evidence tending to show the driver's awareness that his consumption of alcohol would affect" his "perform[ance on] such tests"). Finally, a search warrant is a species of court order. <u>See</u> <u>search warrant</u>, <u>Black's Law Dictionary</u> (11th ed. 2019) (defining a search warrant as an order). Consequently, refusal to comply with a search warrant, in this case one for buccal swabs to obtain the appellant's DNA, similarly provides circumstantial evidence of the appellant's awareness that the test results were likely to implicate him in the charged crimes.

The appellant acknowledges that a fact finder may draw certain evidentiary inferences from a defendant's refusal to comply with a court order seeking identifying information. Nevertheless, he suggests that the principle is inapplicable on the facts of this case. The appellant notes that the judge "originally told" him on February 27 that he "had a constitutional right to refuse to give his DNA" and then stated on May 8 that "he could refuse to give a DNA sample and his trial would wait (and he would remain incarcerated) until he voluntarily complied." Consequently, the appellant argues that the inference recognized in <u>Palmer</u> does not apply on the facts of this case. However, his argument overlooks certain events that are critical to the admissibility analysis.

It is accurate that the trial court initially incorrectly told the appellant, at the February 27 hearing, that he did not have to submit to the DNA test. This occurred at a time when the court mistakenly believed that law enforcement did not have a warrant for that sample. Therefore, when the appellant, at trial, challenged the admission of evidence of his refusal, the court in fact ruled that evidence of his February 27 refusal was inadmissible. Evidence of that refusal was not admitted at trial.

Nevertheless, what took place after February 27 properly dictated different results. At the hearing on March 14, the court discussed the existence of the search warrant and granted the Commonwealth's motion for an order compelling the appellant to provide a DNA sample

pursuant to the search warrant. The evidence further establishes that the appellant was present at that March 14 hearing with his attorney.[8] Accordingly, the record supports the court's finding, by a preponderance of the evidence, that the appellant's refusal to provide a DNA sample when Detective Gunn presented him with a valid search warrant on March 20 was admissible as circumstantial evidence of his awareness that the test results were likely to implicate him in the charged crimes. See Bloom, 262 Va. at 821 (preponderance standard).

The same principles apply to the appellant's refusal of May 17. When the appellant refused to comply on that date, he was on notice of the verbal order to compel issued on March 14, the written order to compel entered March 31, and the trial court's statements at the May 8 hearing declining his request to "withdraw the order." Based on this record, the trial court did not err in ruling that the appellant's refusal of May 17 was also admissible.

The appellant notes that each search warrant was valid for only fifteen days. To the extent he implies that the trial judge's explanation to him regarding his general duty to comply with a valid warrant ended when each warrant expired, we reject this contention. The judge clearly and repeatedly instructed the appellant that he was required to comply with a valid search warrant for a buccal swab DNA sample. He also entered an order compelling the appellant's compliance with one of those warrants. Neither the judge's incorrect original statement that compliance was not required nor the expiration of the warrants of February 27 and March 20 fifteen days after their issuance negated the fact that the detective presented a valid warrant to the appellant when he attempted to obtain the buccal swabs on March 20 and May 17. The record thus supports the trial judge's ruling that evidence of the appellant's second and third refusals was admissible.

---

[8] The court entered an order memorializing that ruling and "order[ing] that the [appellant] comply with the search warrant and submit to a buccal swab" on March 31.

- 15 -

## III. CONCLUSION

For these reasons, we hold that the trial court did not err by excluding the aunt's proffered testimony through which the appellant sought to impeach the credibility of the complaining witness. We further hold that the court did not err by admitting evidence of the appellant's two refusals to cooperate with a search warrant for his DNA. Consequently, we affirm the appellant's convictions.

<u>Affirmed.</u>