COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Huff, Athey and Fulton
Argued at Lexington, Virginia


TARA ANN BAEZ

                                                    OPINION BY
v.        Record No. 0073-23-3            JUDGE JUNIUS P. FULTON, III
                                                 NOVEMBER 14, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
J. Frederick Watson, Judge

Samantha Offutt Thames, Senior Appellate Counsel (Virginia
Indigent Defense Commission, on briefs), for appellant.

David A. Stock, Assistant Attorney General (Jason S. Miyares,
Attorney General; Rebecca M. Garcia, Assistant Attorney General,
on brief), for appellee.

Following a bench trial, the trial court convicted Tara Ann Baez of possessing a Schedule

I or II controlled substance in violation of Code § 18.2-250.  By order entered on December 13,

2022, Baez was sentenced to two years of incarceration, suspended in its entirety.  On appeal,

Baez challenges the admissibility of certain evidence, and the sufficiency of the evidence to

support her conviction.  For the following reasons, we affirm.

## I.  BACKGROUND[1]

### A.  *The Initial Stop and Search*

On May 22, 2020, Officer J.S. Massie and his partner Officer Hubbard with the

Lynchburg City Police Department observed a car speeding through the city.  However, they

---

[1] "Under the applicable standard of review, we view the evidence in the light most favorable to the Commonwealth as the party who prevailed below." *Bennett v. Commonwealth*, 69 Va. App. 475, 479 n.1 (2018) (citing *Riner v. Commonwealth*, 268 Va. 296, 303, 327 (2004)).

were unable to follow the car due to its high rate of speed. Later that evening, Officer Massie, operating his police vehicle, spotted the vehicle again, and was able to pull into the lane behind the car, about a half a city block behind, with his vehicle's emergency equipment activated. The car stopped at the next stop sign and turned right. The car continued down the road and pulled into a vacant parking lot. Officer Massie ordered the driver of the car, who identified herself as Tara Ann Baez, to exit the vehicle. Officer Massie detained Baez for eluding, and ultimately placed her under arrest for her driving behavior.

A canine officer arrived at the scene and conducted a sniff search of the vehicle's exterior. Based on the dog's alert on the vehicle, Officer Massie searched the car. Officer Massie found a brown paper bag with a glass smoking device inside—specifically, the device had a "chore boy . . . lodged on the end of it," which is "indicative of smoking crack cocaine."

A female officer, Officer File, also arrived at the scene. She searched Baez's person. Officer File asked Baez if she had anything that could "stick or poke" her. She also asked if Baez had any narcotics on her person. Baez responded "no" to each question. Officer File thereafter searched Baez and found a folded-up piece of paper in Baez's left front pants pocket. Officer File asked the other officers if one of them would shine a light so she could see, and then unfolded the piece of paper. Thereafter, Officer File approached Officer Massie with the item, which was a receipt containing "two pieces of chunk rock white substance." The officers field-tested the substance, and the substance tested positive for cocaine. Officer Massie placed the substance in an evidence bag, and ultimately handed off the bag to Officer Hubbard. The evidence bag was placed in Officer Massie's police vehicle and taken back to the police department to be processed. It was ultimately sent to the Department of Forensic Science to be tested.

Officer Massie and Officer Hubbard testified at trial, but Officer File did not.  The Commonwealth introduced Officer File's body-worn camera footage into evidence through Officer Massie's testimony, over defense counsel's objection.  The Commonwealth relied upon Officer File's body-worn camera footage in lieu of her testimony to supply her link in the chain of custody of the drugs seized in this case.

At trial, Officer Massie testified that he and Officer Hubbard executed the initial stop and detention of Baez and that he conducted the search of her car, finding the smoking device.  There were no other passengers inside Baez's vehicle.  Officer Massie testified that a Chore Boy was similar to "a Brillo cleaning pad."  He explained that based on his training and experience, the Chore Boy was "indicative of smoking crack cocaine" because it was frequently used as a filter.  Officer Massie confirmed that he was present when Officer File searched Baez.  However, he did not witness Officer File discover the folded-up piece of paper.

The Commonwealth then sought to introduce Officer File's body-worn camera footage.  Defense counsel objected based on "lack of foundation," "a violation of [the] [C]onfrontation [C]lause, and hearsay."  The Commonwealth argued that to authenticate the footage, Officer Massie only needed to be able to testify that the video "clearly and accurately portrays the scene as it was that evening," since he was present.  The Commonwealth also explained that it was not offering any of the statements Officer File made in the video for their truth, so there was no hearsay issue.  The prosecutor offered to mute the video while it played and reiterated that Officer Massie should be permitted to authenticate the video.

Although defense counsel agreed that muting the video would help allay the hearsay objection, she objected to playing the video based on lack of foundation.  She claimed that Officer Massie could not authenticate any portion of the video that he did not personally witness.

Defense counsel argued that the video could be played to corroborate a witness's testimony or as a "silent witness," but either way it needed to be properly authenticated. Defense counsel also argued that if the video were from an officer who was not going to testify, admission of the video would violate Baez's constitutional right to confrontation.

The Commonwealth responded that to properly authenticate the video, the Commonwealth needed only to "adduce a quantum of evidence sufficient to support the finding that the evidence is what it purports to be" and that Officer Massie could do so. The trial court took the foundation objection under advisement, overruled the hearsay and Confrontation Clause objections, and ruled that the Commonwealth was permitted the opportunity to establish a proper foundation for the video. The trial court also ruled that defense counsel could voir dire Officer Massie.

Officer Massie testified concerning a still image produced from the body-worn camera footage recorded the night of the incident. He identified Baez as the person standing near the rear of a patrol vehicle wearing a white shirt and yellow shorts. Officer Massie explained that he was present and that the video was an accurate video taken from the traffic stop the night of the incident. In response to defense counsel's questions, Officer Massie testified that he was not one of the people depicted in the still image as witnessing the interaction. He also testified that the wearer of the body-worn camera had the ability to turn it off and on or mute it. Officer Massie further testified that when officers place the camera on a charger at the end of the day, the video automatically "uploads." On re-direct examination, Officer Massie acknowledged that the date and time stamp on the video was inaccurate but confirmed that the stop occurred "in the late evening hours of May 22nd." Defense counsel renewed the objection based on inadequate foundation for the video, reiterating previous arguments. However, in response to questions by the court, defense counsel admitted that Officer Massie did not have to see "every second" of the

video in order to be able to authenticate it.  Defense counsel argued that a witness must see "enough of the events in question" to be able to testify that the video was accurate and that Officer Massie "may have been on scene somewhere that night but he didn't witness these events."  The trial court overruled defense counsel's objection and found that Officer Massie's testimony "adequately authenticated the video."  The trial court ruled that to the extent the video "may be serving as a silent witness," which it could not determine at that time, "the testimony from the officer established the process by which these body cameras are maintained and uploaded."

Officer File's body-worn camera footage was played for the trial court.  The video depicted the search of Baez's person.  It showed that Officer File found a folded-up piece of paper inside of Baez's pocket.  Officer File unfolded the paper and observed what she suspected were drugs contained inside.  Officer Massie specifically testified that the video depicted Officer File approaching him with a receipt "which was folded over several times."  He stated that the receipt contained "two pieces of chunk rock white substance."  Officer Massie testified that he took the item, suspecting that it contained a controlled substance.  He and Officer File conducted a field test, and then he packaged it for shipping to the Department of Forensic Science, assigning the package a certified mail number.  On cross-examination, Officer Massie stated that although Officer File conducted the search, he observed parts of the search.  He testified that he saw Baez and Officer File "standing beside each other as she conducted her search."  He explained that Officer File placed the substance she was holding into a bag that he was holding. He placed the substance back into the bag after testing it and sealed the bag.  He testified that he kept it on his person until he entered it into property and evidence.  While Officer Massie testified that he saw "part" of the search, he clarified that he just saw them standing near each other as Officer File conducted the search.

Dr. Ashton Lesiak, a forensic scientist at the Department of Forensic Science, testified at trial. She identified a copy of a certificate of analysis that she had signed and prepared. Dr. Lesiak explained that she analyzed a "paper fold which contained [an] off white substance" for the presence of narcotics. She testified that the substance she tested was cocaine. On cross-examination, Dr. Lesiak explained that the sample she tested was from the evidence bag she received. She also testified that although she might wear the same gloves to handle one sample before testing another, there was no chance for transference or cross-contamination while wearing the same gloves. On redirect, Dr. Lesiak explained that when she received the sample, it was inside of a sealed plastic bag. She testified that she had been the one who broke the seal before testing the sample. The Commonwealth offered the certificate of analysis into evidence, and defense counsel objected based on chain of custody.

The court overruled the objection and admitted the certificate of analysis into evidence. At the close of the Commonwealth's case, defense counsel moved to strike the Commonwealth's evidence because "the Commonwealth failed to prove the item tested was actually what was taken from" Baez. Defense counsel argued that the evidence did not show what happened to the drugs when they were field-tested, so the evidence should be struck. The circuit court denied the motion.

Officer Hubbard was called as a witness by the defense. He testified that he was also involved in stopping Baez on May 22, 2020. Defense counsel played some video footage from Officer Hubbard's body-worn camera footage for the court and questioned Officer Hubbard about the footage. Officer Hubbard testified that Officer File searched Baez after she was arrested for felony eluding. He stated that some illegal drugs had been found on Baez's person and that he could not remember whether he had held the bag of narcotics or not. Defense

counsel continued to play Officer Hubbard's body-worn camera footage, and Officer Hubbard testified that it appeared to show Officer Massie hand the evidence bag to him.

Defense counsel then played Officer Massie's body-worn camera footage. Officer Hubbard identified himself in the video and identified an evidence bag. Officer Hubbard testified that according to the video, Officer Massie handed him the evidence bag. Although Officer Hubbard testified that he did not specifically remember what he did with the evidence bag, he explained that he and other officers would typically put evidence into the patrol vehicle. On cross-examination, Officer Hubbard stated that he would typically put evidence into the vehicle he and Officer Massie were riding in the day of the traffic stop. Officer Hubbard explained that after Baez's arrest, he and Officer Massie returned to the police department where either Officer Massie alone, or both officers together, would have processed the evidence. Officer Hubbard testified that neither he nor Officer Massie tampered with the evidence.

Defense counsel renewed her motion to strike, and the circuit court denied it. In closing argument, defense counsel reiterated her argument that the evidence did not show drug possession beyond a reasonable doubt based on chain of custody. In ruling, the trial court found that "all the vital links in the chain of custody were established and any other gaps go to the weight" of the evidence. The trial court stated that it had "considered those gaps and given the appropriate weight to those gaps." The trial court found Baez guilty of possession of cocaine.

At a hearing on April 27, 2022, the trial court vacated the conviction, found the facts sufficient to justify guilt, and deferred a finding of guilt pursuant to Code § 18.2-251 based on Baez's status as a first-time offender. At a later proceeding on December 5, 2022, the trial court found that Baez had violated the conditions of her first-time offender disposition and found her guilty of possession of a Schedule I or II controlled substance.

## II. ANALYSIS

Baez assigns error to her conviction, asserting that: (1) the trial court erred in admitting Officer File's body-worn camera footage; (2) the trial court erred in admitting the certificate of analysis, as every vital link in the chain of custody was not accounted for; and (3) the evidence was not sufficient to prove beyond a reasonable doubt that Baez possessed a controlled substance.

### A. *The Admissibility of Officer File's Body-Worn Camera Footage*

This Court reviews a trial court's evidentiary decisions for abuse of discretion. *Howard v. Commonwealth*, 74 Va. App. 739, 753 (2022). A trial court abuses its discretion if it: (1) fails "to consider a relevant factor that should have been given significant weight," (2) "consider[s] and giv[es] significant weight to an irrelevant or improper factor," or (3) "commits a clear error of judgment." *Fields v. Commonwealth*, 73 Va. App. 652, 672 (2021). We will find an abuse of discretion only when "reasonable jurists could not differ." *Hicks v. Commonwealth*, 71 Va. App. 255, 275 (2019). By definition, a circuit court "abuses its discretion when it makes an error of law." *Tyler v. Commonwealth*, 75 Va. App. 218, 228 (2022). "Furthermore, such evidentiary issues presenting a 'question of law' are 'reviewed *de novo* by this Court.'" *Brown v. Commonwealth*, 54 Va. App. 107, 112-13 (2009) (quoting *Abney v. Commonwealth*, 51 Va. App. 337, 345 (2008)).

Baez makes two arguments on appeal pertaining to the trial court's decision to admit the footage from Officer File's body-worn camera: (1) that it was error for the trial court to admit the video because it violated Baez's constitutional rights under the Confrontation Clause, and (2) that even if Baez's constitutional rights under the Confrontation Clause were not violated, the video was nevertheless not properly authenticated under Virginia Rule of Evidence 2:901, and should have been excluded.

As an initial matter, we disagree with the Commonwealth that Baez failed to preserve her objection related to the Confrontation Clause.  The Commonwealth acknowledges on brief that Baez's Confrontation Clause objection was timely.  But it argues that Baez's objection was not specific enough to satisfy the requirements of Rule 5A:18.  "Rule 5A:18 requires a litigant to make timely and specific objections, so that the trial court has 'an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals.'"  *Stacey v. Commonwealth*, 73 Va. App. 85, 92-93 (2021) (quoting *Brown v. Commonwealth*, 279 Va. 210, 217 (2010)).  "Not just any objection will do.  It must be both *specific* and *timely*—so that the trial judge would know the particular point being made in time to do something about it."  *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019) (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)).  "A general argument or an abstract reference to the law is not sufficient to preserve an issue."  *Edwards v. Commonwealth*, 41 Va. App. 752, 760 (2003) (en banc).

We disagree with the Commonwealth that Baez's objection was not specific enough. Rule 5A:18 requires only that an objection be stated with "*reasonable certainty*."  *See Cox v. Commonwealth*, 65 Va. App. 506, 515 (2015) (quoting Rule 5A:18).  Baez expressly raised the issue of the Confrontation Clause at trial, arguing that: (1) "if it's a video that's from the body-worn camera of an officer who's not present to testify, then admitting [the] video would violate the Confrontation Clause"; (2) "the officer[s] themselves have control over recording, not recording, [and] adjusting their cameras[,] so we already have a Confrontation Clause problem because the officer who's the keeper of this video is not here to testify as to anything she may or may not have done with her camera that night"; and (3) "[W]e don't get to confront the video, we have—the officer who made the video is not here to testify as to how she made it, what she did or anything to do with what was going on[,] or anything that might have been going on

outside of the purview of the video." And as she points out on brief, "[a]t its most basic level, the Confrontation Clause is *only* implicated if the information sought to be admitted is testimonial hearsay." Baez cites *Bennett v. Commonwealth*, 69 Va. App. 475 (2018), for this proposition. *See* 69 Va. App. at 486 ("[T]he United States Supreme Court interpreted the constitutional right of confrontation to apply only to testimonial hearsay."). Baez is therefore correct that her objection at trial "necessarily" incorporated the argument that the evidence at issue was testimonial hearsay. Therefore, her argument on appeal was properly preserved.

Turning to the trial court's decision to admit Officer File's body-worn camera footage, however, Baez's arguments are unavailing.

Baez first argues that her constitutional rights under the Confrontation Clause were violated. She argues that (1) Officer File's actions, recorded in the video, qualify as hearsay because they were intended as assertions, and (2) the video itself was a testimonial assertion, given an officer's "unique" ability to control and manipulate a body camera. We reject both of these contentions.

"[W]e review *de novo* whether a particular category of proffered evidence [implicates the Confrontation Clause]." *Bennett*, 69 Va. App. at 485 (second alteration in original) (quoting *Caison v. Commonwealth*, 52 Va. App. 423, 434 (2008)). "In conducting *de novo* review of a legal issue, the appellate court defers to any factual findings underpinning it, . . . and may reverse them only if they are plainly wrong." *Id.* (citing *Lynch v. Commonwealth*, 46 Va. App. 342, 348-50 (2005), *aff'd*, 272 Va. 204 (2006)).

The Confrontation Clause "mandates that 'in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'" *Wimbish v. Commonwealth*, 51 Va. App. 474, 480 (2008) (quoting U.S. Const. amend. VI). In *Crawford v. Washington*, 541 U.S. 36, 68-69 (2004), "the United States Supreme Court interpreted the

constitutional right of confrontation to apply only to testimonial hearsay. If evidence is testimonial hearsay, it 'is inadmissible unless the [declarant] is unavailable and the defendant had a prior opportunity for cross-examination.'" *Bennett*, 69 Va. App. at 486 (quoting *Adjei v. Commonwealth*, 63 Va. App. 727, 744 (2014)). "Consequently, in the context of our analysis here, in order for evidence to be inadmissible on Confrontation Clause grounds, it must be both (1) hearsay and (2) testimonial in nature." *Id.* (citing *Adjei*, 63 Va. App. at 744).

"Hearsay is defined as 'a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.'" *Id.* (quoting Va. R. Evid. 2:801(c)). "Hearsay statements are testimonial if 'they are the "sort [that] cause the declarant to be a 'witness' within the meaning of the Confrontation Clause."'" *Id.* (quoting *Aguilar v. Commonwealth*, 280 Va. 322, 330 (2010) (alteration in original)). "A 'statement' within the meaning of the rule against hearsay includes not only 'an oral or written assertion' but also 'nonverbal conduct . . . *intended* as an assertion.'" *Id.* at 487 (quoting Va. R. Evid. 2:801(a)). "Regarding nonverbal conduct, 'communicative behavior, such as shaking the head or pointing a finger, will satisfy this definition, whereas walking down the sidewalk and going into a store will not.'" *Id.* (quoting Charles E. Friend & Kent Sinclair, *The Law of Evidence in Virginia* §§ 15-1[a], 15-7, at 898, 942 (7th ed. 2012)); *see also Stevenson v. Commonwealth*, 218 Va. 462, 465-66 (1977). "Both verbal and nonverbal types of *assertive* conduct fall within the definition of hearsay because they depend for their 'value upon the credibility of the out-of-court asserter.'" *Id.* (quoting *Stevenson*, 218 Va. at 465).

Taking the second of Baez's contentions first—that the video constituted a "testimonial" assertion—our case law makes clear that the video *itself* cannot be testimonial. This Court in *Bennett* opined on a very similar issue: whether a silent video and accompanying still

- 11 -

photographs constitute hearsay.[2]  The appellant in *Bennett* advanced the same argument as Baez,

contending that still photographs of a video, admitted into evidence at his trial, were testimonial

in nature.  The Court in *Bennett* reframed Bennett's argument, stating that, though Bennett

"focuse[d] on whether the challenged evidence was testimonial, we hold that the issue turns on

whether the *contents* of the silent video and photographs qualified as hearsay."  *Id.* at 486

(emphasis added).  The *Bennett* Court went on to state that "[b]ased on the principle that

nonverbal conduct qualifies as a 'statement' for hearsay purposes only if it is intended as an

assertion, photographs generally do not constitute hearsay."  *Id.* at 487 (citing *Bynum v.*

*Commonwealth*, 57 Va. App. 487, 491-93 (2011)).[3]  The Court then analyzed whether the still

photographs and the video were admissible under either of the two traditional theories: "'to

illustrate a witness' testimony' or 'as an "independent silent witness" of matters revealed by the

photograph.'"  *Id.* (quoting *Bailey v. Commonwealth*, 259 Va. 723, 738 (2000)).  Of note, the

Court in *Bennett* specifically held that "unless the video contains *conduct* that 'is intended [by

the actor] as an assertion,' the contents of the video simply are not hearsay."  *Id.* (emphasis

added) (alteration in original) (citing Va. R. Evid. 2:801(a)).  Therefore, Officer File's body

---

[2] As the Court in *Bennett* acknowledged, "videos are admissible under the same principles" as photographs.  *Bennett*, 69 Va. App. at 487 (citing *Wilson v. Commonwealth*, 29 Va. App. 236, 238 (1999)).

[3] Some hearsay statements may be testimonial in nature, while other may be non-testimonial.  *See Pulley v. Commonwealth*, 74 Va. App. 104, 122 (2021) ("A statement qualifies as testimonial if the 'primary purpose' of the statement was to 'creat[e] an out-of-court substitute for trial testimony.'" (quoting *Logan v. Commonwealth*, 72 Va. App. 309, 316-17 (2020) (en banc))).  Only "testimonial" hearsay implicates the Confrontation Clause.  *See id.* ("[T]he Confrontation Clause prohibits the introduction of 'testimonial' statements by a witness who does not testify at trial." (quoting *Logan*, 72 Va. App. at 316-17)).  However, here, we do not get to that second step in the analysis because a video is not an assertion, and therefore is not hearsay.

camera video *itself* does not implicate the Confrontation Clause.[4] The Confrontation Clause will only be implicated by conduct or actions *depicted within the video*.

As stated above, Baez next contends that Officer File's conduct depicted in her body-worn camera footage constitutes testimonial hearsay so as to implicate the Confrontation Clause. Baez argues on brief that this question requires de novo review. We again find *Bennett* informative in conducting the appropriate analysis. Holding that the video and still photographs were not themselves testimonial in nature and that they satisfied the silent witness doctrine, the Court in *Bennett* next turned to whether any conduct or actions depicted within the video constituted testimonial hearsay, so as to implicate the Confrontation Clause. The Court in *Bennett* treated this issue as a "question of fact" for the trial court to determine which is afforded "deference." *Id.* at 488 (first citing *Nobles v. Commonwealth*, 218 Va. 548, 551 (1977); and then citing *Lynch*, 46 Va. App. at 348-50).

Here, viewed in the light most favorable to the Commonwealth, the video does not depict any conduct by Officer File intended to be an assertion. Instead, it merely depicts the occurrence of a search conducted by Officer File. Officer File found what she thought might be an illicit substance in Baez's front pocket, and she held it up to the light to get a better look. The trial court was within its discretion to determine as much, and admit the video over Baez's

---

[4] To the extent that Baez argues on appeal that an officer's ability to control and manipulate his or her own body-worn camera is unique, and somehow constitutes a form of speech, we reject that argument. The possibility that a video has been tampered with is a factor that the trial court considers in conducting its authentication analysis under Virginia Rule of Evidence 2:901. *See Reedy v. Commonwealth*, 9 Va. App. 386, 391 (1990) (holding that the possibility of "contamination or tampering" is relevant in determining whether to admit a video under Rule 2:901). As will be noted below, the Court in *Reedy* held that, when there is "mere speculation" of such tampering, it is appropriate to admit the evidence and "let what doubt there may be go to the weight to be given the evidence." *Id.* We do not foreclose the possibility that in certain cases involving body-worn camera footage, where the video evidence is shown to have been so overwhelmingly manipulated, edited, and controlled by the officer that it is inherently unreliable, such evidence may be inadmissible under the principles of Rule 2:901. Such circumstances, however, do not implicate the Confrontation Clause, and are not present here.

Confrontation Clause objection, as the conduct was simply not an assertion, and therefore not hearsay implicating the Confrontation Clause. *Bennett*, 69 Va. App. at 488 ("[U]nless the video contains conduct that 'is intended [by the actor] as an assertion,' the contents of the video simply are not hearsay." (second alteration in original)).

Baez next argues that even if her constitutional rights under the Confrontation Clause were not violated, the trial court nevertheless erred in admitting the video because the Commonwealth did not satisfy the authentication requirements housed in Virginia Rule of Evidence 2:901. Pursuant to Rule 2:901, authentication is "a condition precedent to [the] admissibility" of evidence and is satisfied only by "evidence sufficient to support a finding that the thing in question is what its proponent claims."[5] Regarding video recordings, Virginia recognizes two theories of admissibility for videos: "*either* to illustrate a witness's testimony *or* to serve as an 'independent silent witness' of matters depicted in the video." *Bennett*, 69 Va. App. at 487 (quoting *Bailey*, 259 Va. at 738).

Here, the trial court found that Officer Massie's testimony satisfied the authentication requirements for not one, but *both* theories of admissibility. First, Officer Massie testified that

---

[5] This threshold authentication requirement is a gatekeeping mechanism designed to exclude unreliable evidence. *See, e.g.*, *Canada v. Commonwealth*, 75 Va. App. 367, 377 n.4 (2022) ("The authentication inquiry is a narrow one and is only concerned with the genuineness of the offered evidence."). An important distinction exists, however, between "authentication" and "admissibility." The former "is a necessary but not a sufficient prerequisite to the admission of the evidence." *Id.*; *see also Brooks v. Commonwealth*, 15 Va. App. 407, 410 (1992) (holding that the party offering the evidence must authenticate it before asking the court to admit it into evidence). Once properly authenticated under Rule 2:901, the evidence may be admitted only if its proponent can show that it "complies with all of the other rules of evidence relating to relevance, hearsay, best evidence, etc." *Canada*, 75 Va. App. at 377 n.4. For instance, even authenticated evidence may nevertheless be deemed inadmissible if the trial court finds that its prejudicial effect outweighs any probative value. *See, e.g.*, *Bailey*, 259 Va. at 739 (holding that the trial court did not abuse its discretion in admitting authenticated autopsy photographs where their relevance did not render them "unduly inflammatory"); *Brooks*, 15 Va. App. at 410 ("If the court determines that the information on the tape is relevant and that the probative value of its contents outweigh any prejudicial effect, it should be admitted [after authentication].").

he was present at the scene and that the body-worn camera footage accurately depicted the events that took place the night of the traffic stop. Officer Massie identified Baez and Officer File and explained that he assisted Officer File in placing the drugs found in the bag. He also testified, on cross-examination, that he had seen Baez and Officer File "standing beside each other as she conducted her search." This testimony is sufficient to support the trial court's decision that the Commonwealth had satisfied the authentication requirements contained in Rule 2:901, to illustrate Officer Massie's testimony. *See Ferguson v. Commonwealth*, 212 Va. 745, 746 (1972) (holding that a video "which is verified by the testimony of a witness as fairly representing what that witness has observed is admissible in evidence").

Further, the trial court also found facts sufficient to authenticate the video as a silent witness. Officer Massie testified about how the body-worn cameras work generally, how the videos are created, and that they were uploaded automatically when an officer places his or her camera on its charger at the end of each day. The trial court was entitled to find that the video was continuous, as indicated by the lack of gaps in the time stamps and the passage of time. These factors, coupled with Officer Massie's further testimony confirming the accuracy of portions of the events depicted in the video, are enough on appeal to support the trial court's ultimate finding that the Commonwealth had satisfied the authentication requirements contained in Rule 2:901, for admission as a silent witness. *See Brooks v. Commonwealth*, 15 Va. App. 407, 410 (1992) (holding that once evidence "assuring the accuracy of the process producing" a video is shown, the video is admissible "as a so-called silent witness or as a witness which 'speaks for itself'" (quoting *Ferguson*, 212 Va. at 746)).

Baez argues that: (1) Officer Massie did not create the video, and therefore cannot authenticate it; (2) Officer Massie did not observe the entirety of the events depicted on the video, including, most importantly, the search itself; (3) the trial court erred by finding that *both*

- 15 -

authentication avenues were met, when Virginia case law requires that the test is an "either/or" test, and "[i]t cannot be both"; and (4) the date and time stamp on the video did not match Officer Massie's testimony about when the video was recorded, and therefore the video "does not comport with [Officer Massie's] personal observations on the scene."

First, our case law makes clear that a witness does not have to personally create a video or photograph in order to properly authenticate it. *See Bailey*, 259 Va. at 738 (providing that a video "which is verified by the testimony of a witness as fairly representing what that witness has observed is admissible in evidence and . . . it need not be proved by the [individual] who made it").

Second, to the extent that there were portions of the footage that Officer Massie did not personally observe, we find nothing in our case law to suggest that a witness must personally observe every detail of a proffered video in order to authenticate it.[6] The portions of the video that Officer Massie could verify as accurate and representative of the events during the evening of the traffic stop served to establish the authenticity of the entire recording. *Cf. Clagett v. Commonwealth*, 252 Va. 79, 87 (1996) (explaining that the testimony of an officer was sufficient to authenticate a photograph depicting money taken from the defendant when the officer who had seized items the defendant stole could identify "a distinctive key ring in an accompanying photograph as having been one taken from [the defendant] and photographed at the same time as the money taken from him"). Further, the fact that the trial court found facts sufficient to authenticate the video as a silent witness which "speaks for itself" allays Baez's concerns regarding Officer Massie's ability to testify to certain portions of the video but not others—specifically, the actual discovery of the drugs. Ultimately, whether a witness observed enough of

---

[6] In fact, defense counsel acknowledged this at trial. And further, appellate counsel acknowledged this at oral argument.

the scene depicted on a video to properly authenticate it under Rule 2:901 is a determination within "the sound discretion of the trial court and will be disturbed only upon a showing of a clear abuse of discretion." *See id.* at 86-87.

Third, Baez's citation to *Bennett* for the proposition that the trial court may only find *one* of the two avenues for authentication is unavailing, as we do not read that case to state any such proposition. In stating the general rule that "[t]he content of the video is admissible *either* to illustrate a witness' testimony *or* to serve as an 'independent silent witness' of matters depicted in the video," the Court in *Bennett* merely indicated that the rule is disjunctive. *See* 69 Va. App. at 487-88. In other words, a proponent need only satisfy one of the two avenues in order to properly authenticate a video or photograph. However, this does not lead to the further conclusion that a trial court necessarily errs when it finds that a party has satisfied *both* authentication avenues. We think it is quite an ordinary practice, and perfectly permissible, for a trial court to support its ruling on alternative grounds.

Finally, to the extent that the date and time stamp on the video did not match that of Officer Massie's testimony, such a discrepancy goes to the weight of the evidence, not its admissibility. "'Once the threshold for proving admissibility' was met . . . questions concerning the [accuracy of videos are] relevant only to the [fact finder's] assessment of the weight to give it." *McDaniel v. Commonwealth*, 73 Va. App. 299, 316 (2021) (quoting *Church v. Commonwealth*, 71 Va. App. 107, 122 (2019)). "Where there is mere speculation that contamination or tampering could have occurred, it is not an abuse of discretion to admit the evidence and let what doubt there may be go to the weight to be given the evidence." *Reedy v. Commonwealth*, 9 Va. App. 386, 391 (1990).

Here, Officer Massie acknowledged the discrepancy between the date/time stamp on Officer File's body-worn camera footage, but nevertheless testified that he recognized the scene

depicted in the video and confirmed the actual date and time when the stop occurred. We cannot say that the trial court abused its discretion in admitting Officer File's body-worn camera footage.

### B. The Admissibility of the Certificate of Analysis

We next turn to Baez's contention that the trial court erred by admitting the certificate of analysis.

"When the Commonwealth seeks to introduce evidence regarding the chemical properties of an item, the burden is upon the Commonwealth to show with reasonable certainty that there has been no alteration or substitution of the item." *Herndon v. Commonwealth*, 280 Va. 138, 143 (2010). "However, this burden is not absolute and the Commonwealth is not required 'to exclude every conceivable possibility of substitution, alteration, or tampering.'" *Id.* (quoting *Pope v. Commonwealth*, 234 Va. 114, 121 (1987)). "[A] chain of custody is properly established when the Commonwealth's evidence affords reasonable assurance that the exhibits at trial are the same and in the same condition as they were when first obtained." *Hargrove v. Commonwealth*, 53 Va. App. 545, 553 (2009) (quoting *Anderson v. Commonwealth*, 274 Va. 469, 479 (2007)). "Although '[t]he Commonwealth is not required "to exclude every conceivable possibility of substitution, alteration or tampering,"' it must be able to 'account for every "vital link in the chain of possession."'" *Jeter v. Commonwealth*, 44 Va. App. 733, 737 (2005) (alteration in original) (quoting *Alvarez v. Commonwealth*, 24 Va. App. 768, 776-77 (1997)). "Whether the foundation is sufficient to properly establish the chain of custody is a question within the sound discretion of the trial court." *Hargrove*, 53 Va. App. at 553 (quoting *Anderson*, 274 Va. at 479).

Here, Baez argues that the first "vital link" in the chain of custody of the drugs was not properly established by the Commonwealth. Specifically, Baez argues that there was insufficient evidence of Officer File's initial collection of the evidence. *See Robinson v. Commonwealth*,

212 Va. 136, 138-39 (1971) (reversing a conviction when the first vital link in the chain of custody of certain evidence was not established because the Court could not be reasonably certain from the facts of the case that the exhibits were "in the same condition when analyzed as they were when taken from the victim"). Baez admits on brief, however, that this argument is at least partially predicated on her first assignment of error. She states that she:

> continues to assert that Officer File's testimonial video should not have been presented into evidence in this case, and should not have been considered as a stand-alone link in the chain of evidence as the Commonwealth's Attorney requested. Without that video, there is no testimony that the paper collected by Officer Massie was taken from Ms. Baez. Officer Massie and Officer Hubbard were only aware that Officer File searched Ms. Baez. They did not observe her retrieve anything from Ms. Baez's person.

We agree that the footage from Officer File's body-worn camera was necessary in order for the Commonwealth to properly establish, with reasonable certainty, that the narcotics found on Baez's person were "in the same condition when analyzed as they were when taken from" Baez. However, as we already determined above, the trial court did not abuse its discretion in admitting the video. Therefore, Baez's second assignment of error fails for the same reasons stated above.

After acknowledging that her second assignment of error is partially predicated on her first assignment of error, she goes on to argue two things:

> [1] [W]e still do not have sufficient information about this first, most vital link in the chain of evidence, because Officer File did not testify. The Court is therefore missing vital information about the "treatment" of the item from when it was collected from Ms. Baez until it was submitted to the lab, [and]
>
> [2] [T]he video does not fill in the holes left in the Commonwealth's case because Officer File was not present to be cross-examined. Therefore, there is no answer as to whether or not she changed her gloves preventing cross-contamination, or what process she specifically went through during the search—to include an answer as to why the substance was not found in

- 19 -

Ms. Baez's pocket until Officer File's second, intensive pass around Ms. Baez's person.

To the extent that Baez argues that these are new or different arguments than those contained in her first assignment of error, we disagree; her second assignment of error merely recasts the arguments she makes in her first assignment of error regarding her inability to cross-examine Officer File. But as we have already determined, Officer File's testimony was not necessary in order for the Commonwealth to introduce the video footage of her body-worn camera. Further, that footage speaks for itself, as a silent witness, in proving the first vital link in the chain of custody of the narcotics found on Baez's person. The video depicts Officer File finding the folded-up paper in Baez's left front pocket. Officer File then inspected the folded-up paper for possible narcotics, before walking them over to the hood of a police vehicle to conduct a field test of the substance found inside the folded-up paper. Officer Massie thereafter assisted in that field test, and he and Officer Hubbard testified to their continued custody of the narcotics thereafter. This is sufficient to satisfy Virginia's chain of custody requirements outlined above, and we cannot say that the trial court abused its discretion in admitting the certificate of analysis.

### C. The Sufficiency of the Evidence

Finally, Baez argues that the evidence was not sufficient to prove that Baez possessed the narcotics found on her person. In making this argument, she again attacks the chain of custody.

She again raises the chain of custody issues related to Officer File's initial recovery of the drugs from Baez's front pocket. And she also raises arguments regarding Officer Massie and Officer Hubbard's handling of the narcotics thereafter. First, Baez argues that "evidence of cross-contamination [exists] in this case," based on the fact that Officer Massie searched Baez's car, touched a smoking device associated with drug use, and then touched the substance found in the folded-up paper. Second, Baez argues that a "large fatal gap" exists in the chain of custody of the narcotics because neither Officer Massie nor Officer Hubbard testified to having a "firm

memory of what they did with [the narcotics], only for something to be submitted to the crime lab at the end of the day."

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)). Under well-settled principles of appellate review, we consider the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party below." *Vay v. Commonwealth*, 67 Va. App. 236, 242 (2017) (quoting *Smallwood v. Commonwealth*, 278 Va. 625, 629 (2009)). To the extent determining whether the evidence was sufficient to support a conviction involves interpreting the statute itself, that is a question of law which we review de novo. *See Woodard v. Commonwealth*, 287 Va. 276, 280 (2014).

Baez was convicted of unlawfully possessing cocaine under Code § 18.2-250. That section makes it "unlawful for any person knowingly or intentionally to possess a controlled substance." Code § 18.2-250(A). Baez challenges the sufficiency of the evidence based on

chain of custody. Baez cites *Pope v. Commonwealth*, 60 Va. App. 486, 511 (2012) (quoting *Aguilar*, 280 Va. at 332-33), for the proposition that "gaps in the chain [of custody] normally go to the weight of the evidence rather than its admissibility." Baez argues that here, "the gaps in the chain of custody are so glaring that even if the Court were to consider the Certificate of Analysis, the weight of the evidence is insufficient to support a proper conviction." In essence, Baez argues that there is insufficient evidence that what she possessed was a controlled substance because she alleges the substance tested in the certificate of analysis was not the substance she possessed. We disagree.

In reviewing a challenge to the sufficiency of the evidence, "the appellate court has a duty to examine all the evidence that tends to support the conviction." *Bolden v. Commonwealth*, 275 Va. 144, 147 (2008). "[T]his examination is not limited to the evidence mentioned by a party in trial argument or by the trial court in its ruling." *Id.* If the evidence in the record was admitted at trial, this Court considers it. *Id.*

In addition to the certificate of analysis, the record supports the circuit court's determination that Baez possessed cocaine. Baez was the only person inside the gold Ford Taurus on May 22, 2020. She exhibited abnormal driving behavior. Once she was arrested, Officer Massie found a brown paper bag with a glass smoking device inside. As Officer Massie explained at trial, the fact the device had a Chore Boy "lodged on the end of it" was "indicative of smoking crack cocaine." The white rock substance also appeared to be a controlled substance in Officer Massie's opinion based on his experience. Dr. Lesiak testified that she tested the white substance in the folded-up paper and it was cocaine.

Further, although Officer Massie mistakenly testified at trial that he took the evidence bag containing the cocaine and kept it on his person until he entered it into property and evidence, such a mistake does not take this case out of the domain of the trier of fact. Officer

Hubbard testified, while watching his own body-worn camera footage, that it appeared that Officer Massie handed off the evidence bag to him.  He had no recollection of this, but he further testified that he would typically put evidence into the police vehicle that he and Officer Massie were riding in the day of the traffic stop.  Officer Hubbard explained that after Baez's arrest, he and Officer Massie returned to the police department where either Officer Massie, or both officers together, would have processed the evidence.  Officer Hubbard testified that neither he nor Officer Massie tampered with the evidence.

As Baez notes, any issues involving the chain of custody went to the weight of the evidence, and those fact questions were properly submitted to the finder of fact.  It is within the province of the fact finder, rather than this Court, to weigh the evidence as it deems appropriate.  *See Commonwealth v. Presley*, 256 Va. 465, 470 (1998).  Therefore, the trial court did not err in finding sufficient evidence to support Baez's conviction.

### III.  CONCLUSION

The trial court did not err in admitting the footage from Officer File's body-worn camera.  Further, the chain of custody arguments that Baez raises are unavailing.  Viewed in the light most favorable to the Commonwealth, the record contained sufficient evidence to convict Baez of possessing a Schedule I or II controlled substance.

*Affirmed.*