UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:    Judges Beales, Callins and Senior Judge Clements
Argued by videoconference


JAMES LARRY CRIBBS, JR.

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0347-23-2            JUDGE JEAN HARRISON CLEMENTS
                                                    JUNE 4, 2024
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRICO COUNTY
Rondelle D. Herman, Judge

Charles S. Moore (Law Offices of John C. Singleton, on brief), for
appellant.

David A. Stock, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a jury trial, the Circuit Court of Henrico County convicted James Cribbs, Jr., on

one first offense and 6 subsequent offenses of use of a communication system to solicit a child

under the age of 15 to engage in sexual acts, in violation of Code § 18.2-374.3(C).  On appeal,

Cribbs contends that the trial court erred in admitting evidence obtained from his cellular phone

where the chain of custody was not established on the device, and he asserts that the evidence was

insufficient to support his convictions.  Upon our review of the record, we conclude that the

Commonwealth established a proper chain of custody on Cribbs's cell phone and that the evidence

was sufficient to support his convictions.  We affirm.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND[1]

In April 2021, Henrico County Police Detective Della Strickland initiated an investigation related to the online solicitation of minor children between the ages of 12 and 14. Detective Strickland created a profile on Mocospace[2] using the name "Kate Girl" that included a photograph she created of her own face using age regression software to make her look 12 to 14 years old. On April 14, 2021, a person using the profile "Cribbs Jam" sent a friend request to Detective Strickland. The profile contained a photograph of a white male with red hair later identified as Cribbs. Detective Strickland accepted the friend request, and then she and Cribbs moved to another chatting application, Kik. Detective Strickland's profile on Kik was "Kate Roberts" and included a similar age regression photo. Cribbs's profile on Kik was "Junior James" with a username "JJ Redman 39." Detective Strickland and Cribbs communicated on Kik for the next two months until June 17, 2021, when they switched to text messages. On June 22, 2021, they spoke to each other on the phone.

In their communications on Mocospace and Kik, Cribbs inquired about "Kate's" age, asked if his age bothered her, claimed her age—14 years old—did not bother him and that he loved her age, repeatedly told "Kate" that she was beautiful, and he often asked if she was home alone. The messages soon turned sexual. Cribbs asked "Kate" if he could put his hand in her underwear, asked to see her in her underpants, asked whether she wears a bra and her bra size, asked to kiss her, asked to play with and suck on her breasts, said he wanted to rub her clitoris and perform cunnilingus on

---

[1] "'In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial.' Accordingly, we regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence." *Meade v. Commonwealth*, 74 Va. App. 796, 802 (2022) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).

[2] Detective Strickland testified that Mocospace is a chatting application. She also testified that in order to use chatting applications like Mocospace and Kik, the user must create an account and generate a profile.

her, asked her to masturbate and instructed her on technique, and asked her to send him pictures of herself masturbating. On April 21, 2021, Cribbs messaged "Kate" asking her, "Would you like to suck on my cock?" "Do you want me to slide my cock in your 'pussy' just a little bit?" Cribbs sent "Kate" a picture of what he said was his penis, and then he sent her a picture of a penis, and he asked "Kate" to send him a picture of her "pussy."

On April 26, 2021, Cribbs sent "Kate" another penis picture in conjunction with a conversation about sexual acts he wanted to perform with her, telling her "I want you to ride that." On April 30, 2021, Cribbs sent "Kate" a message asking whether she would perform fellatio on him while he drove them to a hotel and later sent her a picture of a penis. On May 16, 2021, Cribbs sent "Kate" another picture of a penis. The next day, Cribbs referenced that picture while asking if "Kate" wanted to "play with it" and perform fellatio on it. Cribbs also sent "Kate" a picture of a female performing fellatio. Cribbs asked "Kate" in a subsequent message, "Do you want to do what she is doing with my cock?" On June 15, 2021, Cribbs sent "Kate" messages asking her to "make love" with him in the shower. Cribbs asked "Kate" if she would "want me to be inside you." He told her that his being inside her would hurt her at first, but he would be gentle with her and "go very slowly."

In texts, Cribbs told "Kate" he would like to see her in a bikini and that he loved her. He asked her what color panties she wore, and then asked her to take off her shorts and panties, lick her fingers, and rub her "pussy." He texted her a picture of a penis and asked her to send him a picture of her rubbing her "pussy." During their phone call on June 22, 2021, Cribbs told "Kate" she has a beautiful voice. After the phone call, he again told her in a text that she has a beautiful voice. In a final text message on June 25, 2021, Cribbs again inquired what color panties "Kate" wore.

Detective Strickland issued a subpoena to Mocospace seeking subscriber information for the "Cribbs Jam" profile. Mocospace provided the "latitude and longitude that was registered when the

device was signed into Mocospace" and the phone number used to access the account. Detective Strickland noted that the text messages and the phone call she had received in June were initiated from the cell phone number listed on the Mocospace account. The geographic location led Detective Strickland to Cribbs's residence in Cross Lanes, West Virginia. Thereafter, Detective Strickland contacted the authorities in West Virginia seeking Cribbs's arrest and extradition. The Kanawha County Sheriff's Office in West Virginia arrested Cribbs and later sent her a cell phone via FedEx that was wrapped in bubble wrap and a brown paper bag and packaged in a box. The phone was analyzed for its contents, and the data was admitted at trial over Cribbs's objection.

Detective Strickland's phone number was stored in Cribbs's contacts under the name "Kate." The call log captured the phone call Cribbs made to Kate on June 22, 2021. The phone contained the photographs Cribbs sent to Detective Strickland on Kik and in texts. The phone also had a picture of the tattoo Cribbs used for his profile picture on Kik and nude photographs of himself in his bathroom, which he mentioned in a jail call to his wife. Text messages sent on June 7, 2021, indicated that Cribbs was in Rich Creek, Virginia, near Narrows, Virginia, a location from which he took photographs of his driver's license on June 9, 2021. Other photographs in the phone had metadata showing they were taken at Cribbs's address in West Virginia. The Google search history recorded numerous searches for teen-related pornography. Notably, Detective Strickland received no further communication from Cribbs after his arrest.

Henrico County Police Detective Joseph Wechsler testified as an expert in "cell phone forensics, including Cell Bright and cell phone location data." Detective Wechsler analyzed the cell phone the West Virginia authorities sent to Detective Strickland. Detective Wechsler reviewed the "continuous" timeline on the phone from February 2019 until June 25, 2021. No malicious software was present on the device. Detective Wechsler testified that in his training and experience remote access to all of the platforms used for communication between Detective Strickland and

Cribbs was not possible while the device was in the possession of the police. There was no indication that the phone's security features had been bypassed or removed. Detective Wechsler also testified that he was not aware of any method that would allow someone to remotely access the device itself to send pictures or text messages or to add or alter the phone's data. Detective Wechsler testified that the phone number assigned to the SIM card inside the cell phone matched Cribbs's number.

Cribbs objected to the admission of the cell phone and all of the data recovered from it, on the basis that the chain of custody on the phone was not properly established. He argued that the evidence failed to exclude the possibility that the phone was tampered with or that someone other than himself had access to it and altered it. The trial court overruled his repeated objections and admitted the cell phone and the evidence recovered from it.

After the Commonwealth rested, Cribbs moved to strike the evidence on the grounds that it was insufficient to prove he was the one who communicated with Detective Strickland on Mocospace, Kik, and in texts. The trial court denied the motion to strike and, following closing arguments, the jury convicted Cribbs of all the charges. The trial court later denied Cribbs's motion to set aside the verdict. This appeal followed.

## ANALYSIS

### I. Chain of Custody on Cribbs's Cell Phone

Cribbs contends that the trial court erred in admitting evidence obtained from his cell phone because the chain of custody on the phone and the data obtained from it was not accounted for

between the time the phone was seized and when it arrived by FedEx to Detective Strickland.[3] We find that, because the Commonwealth's evidence established a sufficient chain of custody on the cell phone, the trial court did not err in admitting the phone or its contents at trial.

"The determination on a chain of custody challenge lies within the trial court's broad discretion and will not be overturned on appeal absent an abuse of that discretion." *Pope v. Commonwealth*, 60 Va. App. 486, 511 (2012). A court abuses its discretion "if its decision was affected by an error of law or was one with which no reasonable jurist could agree." *Belcher v. Commonwealth*, 75 Va. App. 505, 523 (2022) (quoting *Tomlin v. Commonwealth*, 74 Va. App. 392, 409 (2022)). "The abuse of discretion standard draws a line—or rather, demarcates a region— between the unsupportable and the merely mistaken, between the legal error . . . that a reviewing court may always correct, and the simple disagreement that, on this standard, it may not." *Jefferson v. Commonwealth*, 298 Va. 1, 10-11 (2019) (alteration in original) (quoting *Reyes v. Commonwealth*, 297 Va. 133, 139 (2019)). "[T]he abuse of discretion standard requires a reviewing court to show enough deference to a primary decisionmaker's judgment that the [reviewing] court does not reverse merely because it would have come to a different result in the first instance." *Commonwealth v. Thomas*, 73 Va. App. 121, 127 (2021) (alterations in original) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 212 (2013)).

"The purpose of the chain of custody rule is to establish that the evidence obtained by the police was the same evidence tested." *Jeter v. Commonwealth*, 44 Va. App. 733, 737 (2005) (quoting *Robertson v. Commonwealth*, 12 Va. App. 854, 857 (1991)). "[A] chain of custody is

---

[3] Cribbs does not dispute that the phone sent to Detective Strickland was, in fact, his cell phone. Rather, he contends that the Commonwealth failed to satisfy the chain of custody on the phone from the time of his arrest until it was received by Detective Strickland in Virginia, and he maintains that the evidence therefore failed to rule out the possibility that the data on his phone was tampered with after his arrest and before the phone's transport to Virginia. For that reason, we limit our analysis to that specific part of the chain.

properly established when the Commonwealth's evidence affords reasonable assurance that the exhibits at trial are the same and in the same condition as they were when first obtained." *Anderson v. Commonwealth*, 274 Va. 469, 479 (2007) (alteration in original) (quoting *Vinson v. Commonwealth*, 258 Va. 459, 469 (1999)), *cert. denied*, 553 U.S. 1054 (2008). Thus, when evidence has "passed through several hands" the circumstances presented at trial "must not leave it to conjecture as to who had it and what was done with it between the taking and the analysis." *Robertson*, 12 Va. App. at 857 (quoting *Horsley v. Commonwealth*, 2 Va. App. 335, 338 (1986)). "[T]o satisfy the chain of custody requirement, the proponent of the evidence must show 'with reasonable certainty that the item [has] not been altered, substituted, or contaminated prior to analysis, in any way that would affect the results of the analysis.'" *Jeter*, 44 Va. App. at 737 (second alteration in original) (quoting *Crews v. Commonwealth*, 18 Va. App. 115, 119 (1994)). The Commonwealth "is not required to exclude every conceivable possibility of substitution, alteration or tampering." *Alvarez v. Commonwealth*, 24 Va. App. 768, 776 (1997) (quoting *Robertson*, 12 Va. App. at 857). However, it must be able to "account for every 'vital link in the chain of possession.'" *Id.* at 777 (quoting *Robinson v. Commonwealth*, 212 Va. 136, 138 (1971)). "In the event that a gap in the chain of custody is shown, 'gaps in the chain [of custody] normally go to the weight of the evidence rather than its admissibility.'" *Pope*, 60 Va. App. at 511 (alteration in original) (quoting *Aguilar v. Commonwealth*, 280 Va. 322, 332-33 (2010)).

In this case, the evidence showed that Detective Strickland sought a felony warrant after completing her investigation and identifying Cribbs as the person with whom she had been speaking on Mocospace, Kik, and in text messages. Following Cribbs's arrest, the authorities in West Virginia sent Detective Strickland Cribbs's cell phone via FedEx, wrapped in bubble wrap and a paper bag, and packaged in a box. Detective Wechsler, testifying as an expert in cell phone forensics, explained that he analyzed the phone and found that no malicious software was present on

it, that the phone was continuously active from February of 2019 until June 25, 2021, that there was no indication the phone's security features were compromised, that in his training and experience remote access to the platforms used to communicate with Detective Strickland was not possible while the phone was in the possession of the police, and that he was not aware of any software that would allow someone to remotely access Cribbs's cell phone to send pictures or texts and to add to or alter the phone's data. Thus, Detective Wechsler's testimony sufficiently established that the phone and its data were not tampered with at all, much less while it was in the care and custody of the West Virginia authorities.

Moreover, the law does not support Cribbs's suggestion that the Commonwealth's failure to establish the initial link in the chain of custody renders it insufficient as a matter of law. Cribbs does not deny that he possessed his cell phone at least until his arrest in July 2021, and there is a reasonable inference that the police seized his cell phone during that arrest. Cribbs does not dispute that the police, in fact, sent the phone to Detective Strickland. The record contains reasonable assurances, then, that the phone was, after Cribbs's arrest, in the custody of the authorities in West Virginia until sent by FedEx to Detective Strickland in Virginia. "In the absence of clear evidence to the contrary, courts may presume that public officers have properly discharged their official duties." *Robertson*, 12 Va. App. at 856–57. "[P]ostal workers are [also] entitled to a presumption of regularity in the performance of their duties." *Branham v. Commonwealth*, 283 Va. 273, 282 (2012).

Cribbs has presented no evidence to establish that the phone or any of its contents were mishandled by the police or by the postal service, and there is no affirmative evidence that someone other than himself possessed and used the phone. Rather, he alleges only the mere possibility of mishandling, which is not proof. In the absence of any evidence of tampering or mishandling, the trial court was justified in presuming that the cell phone was properly handled while in the hands of

the police and the postal service and it follows that the Commonwealth provided reasonable assurances that the evidence analyzed and presented at trial was in the same condition as it was when obtained by police.

In short, Cribbs's complaint goes not to the chain-of-custody requirement for admissibility, but to the weight to be given such evidence by the jury, as finder of fact. The record in this case supports the trial judge's decision to admit the cell phone into evidence, and the testimony at trial provided the jury with a sufficient factual basis for finding the data persuasive. We find no abuse of discretion in the trial court's ruling.

## II. Sufficiency of the Evidence

Cribbs also maintains that the trial court erred in finding the evidence sufficient to support his convictions. While Cribbs does not dispute that the communications in this case were sent with the requisite lascivious intent to a person believed to be under the age of 15, or that they proved the specific acts prohibited by the statute, he maintains that the evidence failed to prove he was the one communicating with "Kate." We disagree. The record sufficiently supports the jury's finding that Cribbs was the person communicating with "Kate" on Monospace, Kik, in texts, and during the June 22, 2021 phone call.

"In determining whether the evidence was sufficient to support a criminal conviction, the appellate court views the facts in the 'light most favorable' to the Commonwealth." *Green v. Commonwealth*, 72 Va. App. 193, 200 (2020) (quoting *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017)). "In conducting [its] review, the Court defers to the trial court's findings of fact unless they are plainly wrong or without evidence to support them." *Brewer v. Commonwealth*, 71 Va. App. 585, 591 (2020). "This deference is owed to both the trial court's assessment of the credibility of the witnesses and the inferences to be drawn 'from basic facts to ultimate facts.'"

*Eberhardt v. Commonwealth*, 74 Va. App. 23, 31 (2021) (quoting *Davis v. Commonwealth*, 65 Va. App. 485, 500 (2015)).

Our deferential standard of review also "requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth[ ] and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn' from that evidence." *Green*, 72 Va. App. at 200 (alteration in original) (quoting *Vasquez v. Commonwealth*, 291 Va. 232, 236 (2016)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)). "In the end, the appellate court 'ask[s] whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."'" *Eberhardt*, 74 Va. App. at 31 (alteration in original) (quoting *Davis*, 65 Va. App. at 500).

> It is unlawful for any person 18 years of age or older to use a communications system, including but not limited to computers or computer networks or bulletin boards, or any other electronic means, for the purposes of soliciting, with lascivious intent, any person he knows or has reason to believe is a child younger than 15 years of age to knowingly and intentionally:
>
> 1. Expose his sexual or genital parts to any child to whom he is not legally married or propose that any such child expose his sexual or genital parts to such person;
>
> 2. Propose that any such child feel or fondle his own sexual or genital parts or the sexual or genital parts of such person or propose that such person feel or fondle the sexual or genital parts of any such child;
>
> 3. Propose to such child the performance of an act of sexual intercourse, anal intercourse, cunnilingus, fellatio, or anilingus or any act constituting an offense under § 18.2-361; or
>
> 4. Entice, allure, persuade, or invite any such child to enter any vehicle, room, house, or other place, for any purposes set forth in the preceding subdivisions.

Code § 18.2-374.3(C). Thus, under this code section, "a defendant is guilty of illegally using a communication system if he contacts 'any person he knows or has reason to believe is a child less than 15 years of age' with lascivious intent for the purpose of soliciting that person's involvement in any of several sexual encounters." *Grafmuller v. Commonwealth*, 57 Va. App. 58, 61 (2010) (quoting Code § 18.2-374.3(C)).

The record here contains considerable evidence upon which the jury could conclude that Cribbs was the author of the messages sent to Detective Strickland and the person with whom she spoke on June 22, 2021. As a starting point, the authorities in West Virginia provided a cell phone number for Cribbs that matched the phone number from which Detective Strickland received the text messages and the June 22, 2021 phone call. In a later interview with Cribbs, Detective Strickland recognized his voice from the phone call she received from his phone number. Some of the photographs sent by text to Detective Strickland from Cribbs's known phone number were pictures of the same white male with red hair she later identified in court as Cribbs. Multiple photos sent to Strickland via Kik, including many that had indications they were taken live, were of the same white male with red hair. Pictures found on the phone were taken at or near Cribbs's home address. Cribbs was in Rich Creek, Virginia, on June 7, 2021, near the Virginia location where photos of his driver's license were taken on June 9, 2021. Cribbs used the same language in both the June 22 phone call with Strickland and a text immediately afterward about her having a "beautiful voice." The phone also had a picture of the tattoo Cribbs used for his profile picture on Kik and nude photographs of himself in his bathroom, which he referred to in a jail call to his wife. The Google search history in Cribbs's phone recorded numerous searches for teen-related pornography. Finally, Detective Strickland received no further communication from Cribbs after his arrest.

- 11 -

It is beyond question that the evidence recovered from the phone is consistent with and corroborates the evidence Detective Strickland obtained during her investigation. The only reasonable inference is that it was Cribbs who was using his phone to communicate with Detective Strickland. The Commonwealth therefore established that the defendant was responsible for the multiple lascivious communications with "Kate" in an attempt to solicit a minor for sex. "While no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion." *Finney v. Commonwealth*, 277 Va. 83, 89 (2009) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)). Here, the combined evidence at trial constituted sufficient evidence to establish that Cribbs used his cell phone to send numerous messages and photographs to "Kate" with lascivious intent, knowing or having reason to believe she was under the age of 15, in order to solicit her involvement in various sexual encounters, in violation of Code § 18.2-374.3(C).

Finally, we reject the notion that the evidence was insufficient to support Cribbs's convictions because of a remote possibility that some unknown person had possible access to his phone. The evidence at trial did not support that suggestion, and the jury clearly rejected it. "The Commonwealth . . . 'need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant.'" *Young v. Commonwealth*, 70 Va. App. 646, 653 (2019) (quoting *Simon v. Commonwealth*, 58 Va. App. 194, 206 (2011)). "The fact finder 'determines which reasonable inferences should be drawn from the evidence[ ] and whether to reject as unreasonable the hypotheses of innocence advanced by a defendant.'" *Id.* at 654 (alteration in original) (quoting *Moseley*, 293 Va. at 464). "Consequently, whether the evidence excludes all reasonable hypotheses of innocence is a 'question of fact,' and like any other factual finding, it is subject to 'revers[al] on appeal only if plainly wrong.'" *Id.* (alteration in original) (quoting *Thorne v. Commonwealth*, 66 Va. App. 248, 254 (2016)). We find no error in the jury's

rejection of Cribbs's suggested hypothesis of innocence. The facts proved at trial, with all reasonable inferences fairly deduced therefrom, would lead any reasonable fact finder to the conclusion that Cribbs was, in fact, the person who communicated with "Kate."

We find no error in the trial court.

## CONCLUSION

The trial court did not err in admitting the contents of Cribbs's cell phone at trial, as the evidence established a sufficient chain of custody providing reasonable assurances that the phone and its contents were what they purported to be. Moreover, the evidence was sufficient to prove that Cribbs committed 7 separate offenses of using a communications system to solicit a child he believed to be less than 15 years old, when he was 7 or more years older than her, in violation of Code § 18.2-374.3(C).

*Affirmed.*