COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Huff, Athey and Fulton
Argued by videoconference


RAHEEM TYREE WALTERS

                                            MEMORANDUM OPINION* BY
v.        Record No. 0840-23-3              JUDGE CLIFFORD L. ATHEY, JR.
                                                 NOVEMBER 6, 2024
COMMONWEALTH OF VIRGINIA


           FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
                        Stacey W. Moreau, Judge

           Jason S. Eisner for appellant.

           Tanner M. Russo, Assistant Attorney General (Jason S. Miyares,
           Attorney General, on brief), for appellee.


        Following a bench trial held on February 14, 2023, in the Circuit Court of Pittsylvania

County ("trial court"), Raheem Tyree Walters ("Walters") was convicted of possession of

methamphetamine and possession of drugs by an inmate.  By final order entered on April 13,

2023, the trial court sentenced Walters to a total of 10 years' imprisonment, with 8 years, 8

months suspended.  On appeal, Walters assigns error to the trial court for finding: 1) that the

Commonwealth established an unbroken chain of custody of the illegal substances found in his

possession and 2) that the evidence was sufficient to prove Walters knew he possessed those illegal

substances.  Finding no error, we affirm the trial court's judgment.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

I. Background[1]

Walters was incarcerated at Green Rock Correctional Center ("Correctional Center"), in Chatham, Virginia, on January 24, 2020. During that day, Corrections Officer Ashley Pope ("Officer Pope") and another corrections officer conducted a random search of Walters's cell that he shared with another inmate. During the search, both Walters and his cellmate were handcuffed and placed outside of the cell.

Officer Pope subsequently discovered a jar of "medical cream" in the cell located on a shelf above the sink. When she picked up the jar, she heard a "rattling" noise. She then opened the jar and discovered that the jar contained an "insert." Officer Pope then proceeded to remove this "insert" from the inside of the jar, and under the insert, she found two "orange-colored strips" and "a piece of an oatmeal packet with white powder inside of it." When the inmates were asked "whose jar of cream it was" and about the jar's contents, Walters "claimed . . . ownership for all of it."

Following the completion of the search, Officer Pope maintained possession of the jar until she sealed it in an evidence bag at 7:30 p.m. that night. At trial, she testified that she placed the evidence bag in a "drop box" within the "evidence locker" at the "watch office." The drop box included a locking "mechanism" that allowed Officer Pope to place the evidence bag in the drop box which was then dropped in the evidence locker thereby permitting only those officers who had "a key to that locker" to access the evidence. The evidence locker was located in the office of Sergeant C. Warring ("Sergeant Warring"), the "actual supervisor" of the Correctional

---

[1] On appeal, we review the evidence "in the 'light most favorable' to the Commonwealth, the prevailing party in the circuit court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

Center's "institutional investigators." Officer Pope further noted in the evidence log that Sergeant Warring received the jar upon its deposit in the box. Only Sergeant Warring and two other "institutional investigators" could access the evidence box. After depositing the evidence bag in the drop box, Officer Pope testified that she had no further access to the jar. Later that same day, she also prepared a written report logging these events.[2] In her report, Officer Pope described the contents of the jar as being "two Suboxone strips and a white powdery substance."

On January 27, 2020, Sergeant Warring retrieved the evidence bag from the drop box in the evidence locker before giving it to fellow Investigative Officer Arnold Hamlett ("Officer Hamlett"). Officer Hamlett testified that he was responsible for logging the chain of custody for contraband seized at the Correctional Center.[3] Officer Hamlett further testified that he then took the evidence out of the evidence bag, "took photographs of it, placed it in a [different] evidence bag, . . . and then started writing it in [his] evidence log." Officer Hamlett also testified that he then documented the contraband in an "evidence custody report." The custody report filed by Officer Hamlett detailed that the bag had been received at 10:00 a.m. on January 27, 2020, that it contained evidence pertaining to an "investigation," that the evidence was described as an "orange colored substance with clear crystal also in [sic] bottle," and that this evidence was found "in a cream bottle." However, in the chain of custody section of the evidence custody report, the only transfer listed was from Officer Pope to Officer Hamlett via the "evidence drop box." After documenting the transfer in the report, Officer Hamlett placed the evidence bag back into the evidence locker.

On February 20, 2020, Officer Hamlett completed a Virginia Department of Forensic Science ("DFS") "Request for Laboratory Examination" form describing the evidence as one

---

[2] This report is not contained within the record before this Court.

[3] Officer Hamlett was one of the investigators who had access to the evidence box.

"large square piece of suspected Suboxone."  After completing the request form, Officer Hamlett delivered the evidence bag for laboratory testing to the DFS laboratory located in Roanoke, Virginia.

On May 4, 2020, Dr. Ashton Lesiak ("Dr. Lesiak"), a forensic toxicologist at the Roanoke DFS lab, testified that she received the evidence transported by Officer Hamlett after it had been processed through the lab's "evidence[-]receiving section."  Upon receipt, Dr. Lesiak noted that the evidence was inside a sealed plastic bag and had been assigned laboratory number W20-2385.  Throughout the laboratory examination, Dr. Lesiak testified that the evidence remained inside a secured locker located at her workbench.  She also stated that when the testing was completed, she returned the evidence to the lab's evidence-receiving section.

Dr. Lesiak also noted that Officer Hamlett's description of the contents of the evidence bag was that it contained one large square piece of suspected Suboxone.  However, she testified that upon opening the evidence bag, she found two "orange films," an off-white crystalline substance, four black, white, and yellow films, and the medical cream jar.  After noting the discrepancy between Officer Hamlett's description of the contents and the actual evidence found in the evidence bag, pursuant to DFS policy, Dr. Lesiak requested that another examiner inspect and verify the contents of the evidence bag.  She also emailed Officer Hamlett to alert him to this discrepancy and "stopped testing until [she] heard back from him."

Officer Hamlett responded by directing that Dr. Lesiak "could continue testing on all of the items except for the plastic container with the white cream substance."  Dr. Lesiak then resumed testing of the items which revealed that buprenorphine and naloxone, which form a Schedule III controlled substance called Suboxone, was present in the orange-colored strips and the four other films.  Further testing also disclosed that the off-white substance within the evidence bag contained methamphetamine.  These findings were confirmed in a May 7, 2020

DFS certificate of analysis lab report prepared by Dr. Lesiak that was subsequently sent to Officer Hamlett at the Correctional Center along with the evidence tested. In accordance with the results of the test, the Commonwealth secured indictments against Walters for the offenses of possession of methamphetamine and possession of drugs by an inmate.

At trial, Officer Pope further testified that the jar moved into evidence at trial was the same jar she retrieved from Walters's cell on January 24, 2020, and that it was in the same or substantially similar condition as when she found and confiscated it. When asked on cross-examination about why she wrote in her report that she had turned the bag over to Sergeant Warring when Officer Hamlett's custody report showed that the evidence was turned over to him instead, she responded that she did so because the drop box was "in his office."

Officer Hamlett also testified to the chain of custody, adding that once he had filled out the evidence custody report, he placed it in the Correctional Center's evidence locker in a part that "[n]obody" else could access. He also provided that the evidence bag contained the evidence he had received on January 27, 2020, and that it was in the same or substantially similar condition as when he reviewed and documented it. On cross-examination, he was questioned concerning the delay between when the evidence bag was placed in the locker to the time it was finally taken to the DFS lab for testing. Officer Hamlett responded that he kept evidence in the locker until he had multiple items to take for testing "[b]ecause we don't take anything to the lab, just one thing." Hence, Officer Hamlett concluded that he "probably took more than just [the evidence bag] to the lab." When questioned as to why he included only the description of the suspected suboxone on the DFS request form, he answered that he did so because he was "not sure what that powder stuff was."

Following cross-examination of the witnesses testifying as to the chain of custody of the evidence tested by DFS, counsel for Walters objected to the introduction of the DFS forensic lab

report prepared by Dr. Lesiak. He contended that the Commonwealth had not adequately established the chain of custody for the tested items "before [the items] g[ot] to" Dr. Lesiak, specifically questioning Officer Pope's account that she turned over "two items" of suspected contraband to Sergeant Warring as the records showed that the evidence "end[ed] up with [Officer Hamlett] who . . . fill[ed] [out the DFS request form] and sen[t] it out almost a month later . . . saying [the insert contained] one square of Suboxone."

The trial court overruled Walters's objection and admitted the forensic lab report after finding that the Commonwealth had adequately established the chain of custody of the evidence. The trial court further reasoned that Officer Pope's testimony established that she did not personally turn over the items to Sergeant Warring but, rather, placed the evidence in a drop box in his office.

After the admission of the May 7, 2020 DFS certificate of analysis, Dr. Lesiak further testified about the specific tests she performed and each of the test results. Further, during direct examination, she explained that the DFS lab employs quality controls to ensure that evidence is not tainted with evidence from another case. Specifically, she detailed that these controls provide that each case that is submitted to the lab is assigned a "unique laboratory identification number." She also testified that as a matter of personal practice, she "only open[s] one case at a time, sample[s] the evidence, [and] reseals [the evidence]" before testing evidence in other cases. When questioned on cross-examination, Dr. Lesiak testified that when "the evidence [does] not, will not match exactly what is on the [lab request form] . . . our policy says to have another examiner verify it, and if there is a discrepancy to reach out to the officer for any clarification." She also noted that this "verification is another check to make sure that what we see is different from what is listed on the paperwork because we are not restricted [to what is listed on the form] but we try to follow what the paperwork indicates."

At the conclusion of the Commonwealth's case, Walters moved to strike the evidence, arguing that the Commonwealth had failed to adequately establish the chain of custody for the tested items. Walters amplified his earlier objection by additionally arguing that because the number of items tested by Dr. Lesiak differed from the number of items Officer Pope testified she found in Walters's cell as well as the number of items Officer Hamlett listed on the DFS request form, there was a "discrepancy" that broke the chain of custody. The trial court denied the motion to strike, again finding that the Commonwealth had adequately established the chain of custody for testing the contraband.

Walters then testified in his own defense, asserting that when Officer Pope asked him about the jar of medical cream, he "said the cream is mine" but that he "never knew" where the drugs came from. He further denied knowing, or telling Officer Pope that he knew, the jar contained drugs. He acknowledged that the jar was his and testified that he had used the cream approximately two times, four months before Officer Pope inspected his cell on January 24, 2020.

At the conclusion of all the evidence, Walters renewed his motion to strike on chain of custody grounds. He also moved to strike the charges on sufficiency grounds, arguing that Officer Pope's testimony that he had claimed ownership over the contents of the jar was not credible and that there was "at least a fifty percent chance [the drugs] belong[ed]" to Walters's cellmate. The trial court denied Walters's motion to strike again before convicting him of both possession of methamphetamine and possession of drugs by an inmate. The trial court noted on the record that it credited Officer Pope's testimony that Walters claimed ownership over "all" of the contraband and found Walters's claim that he only owned the jar incredible. Walters appealed.

## II. ANALYSIS

### A. *Standard of Review*

"[W]e review a trial court's decision to admit or exclude evidence using an abuse of discretion standard and, on appeal, will not disturb a trial court's decision to admit evidence absent a finding of abuse of that discretion." *Kenner v. Commonwealth*, 299 Va. 414, 423 (2021) (alteration in original) (quoting *Avent v. Commonwealth*, 279 Va. 175, 197 (2010)). "Whether the foundation is sufficient to properly establish the chain of custody is a question within the sound discretion of the trial court." *Hargrove v. Commonwealth*, 53 Va. App. 545, 553 (2009) (quoting *Anderson v. Commonwealth*, 274 Va. 469, 479 (2007)).

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

B. *The trial court did not abuse its discretion in determining that the Commonwealth established the chain of custody for the lab tested evidence.*

First, Walters assigns error to the trial court for finding that the Commonwealth satisfied its burden to prove the chain of custody related to the evidence found in the medical cream jar. In support, he asserts that because "multiple people had access to the evidence, the witnesses were in conflict about how the evidence was transferred and the evidence that actually reached the lab was not what was represented on the paperwork . . . vital links in the chain are clearly missing." We disagree.

"When the Commonwealth seeks to introduce evidence regarding the chemical properties of an item, the burden is upon the Commonwealth to show with reasonable certainty that there has been no alteration or substitution of the item." *Herndon v. Commonwealth*, 280 Va. 138, 143 (2010). "However, this burden is not absolute[,] and the Commonwealth is not required 'to exclude every conceivable possibility of substitution, alteration, or tampering.'" *Id.* (quoting *Pope v. Commonwealth*, 234 Va. 114, 121 (1987)). "[A] chain of custody is properly established when the Commonwealth's evidence affords reasonable assurance that the exhibits at trial are the same and in the same condition as they were when first obtained." *Hargrove*, 53 Va. App. at 553 (alteration in original) (quoting *Anderson*, 274 Va. at 479). "Although '[t]he Commonwealth is not required "to exclude every conceivable possibility of substitution, alteration or tampering,"' it must be able to 'account for every "vital link in the chain of possession."'" *Jeter v. Commonwealth*, 44 Va. App. 733, 737 (2005) (alteration in original) (quoting *Alvarez v. Commonwealth*, 24 Va. App. 768, 776-77 (1997)). "In the event that a gap in the chain of custody is shown, 'gaps in the chain [of custody] normally *go to the weight of the evidence* rather than its admissibility.'" *Pope v. Commonwealth*, 60 Va. App. 486, 511 (2012) (alteration in original) (emphasis added) (quoting *Aguilar v. Commonwealth*, 280 Va. 322, 332-33 (2010)). Indeed, in *Pope*, we determined that a trial court did not err "in concluding that [a police

- 9 -

officer's] failure to enumerate the [evidence recovered] in his report or state how he kept [it] overnight did not constitute a missing 'vital link' in the chain of custody but rather went to the weight of the evidence." *Id.* at 512.

To note, "[w]hen the Commonwealth introduces a certificate of analysis as evidence of the chain of custody of the material described in the certificate, the certificate of analysis serves as prima facie evidence of the chain of custody of the material tested during the time the evidence is in the custody of the laboratory." *Herndon*, 280 Va. at 143; *see, e.g.*, Code § 19.2-187.01(i). And otherwise, "in the 'absence of clear evidence to the contrary, courts may presume that public officers have properly discharged their official duties.'" *Anderson v. Commonwealth*, 48 Va. App. 704, 715 (2006) (quoting *Robertson v. Commonwealth*, 12 Va. App. 854, 856-57 (1991)).

Here, we find the evidence in the record demonstrates with reasonable assurance that the trial court did not abuse its discretion in finding that the Commonwealth established the chain of custody for the tested contraband. To begin, Officer Pope testified that she retained possession of the jar and its contents from the time she confiscated the jar on Friday, January 24, 2020, until she placed the contraband in the evidence bag in the "evidence box." On Monday, January 27, 2020, Officer Hamlett either retrieved the contraband from the evidence box himself, as indicated on the evidence custody form, or he received the evidence from Sergeant Warring who had retrieved the contraband from the evidence box. Next, Officer Hamlett photographed the evidence, made records of the evidence, and placed the evidence in a locker (which he had exclusive access over). Finally, on February 20, 2020, Officer Hamlett personally transported the evidence to the DFS lab in Roanoke for testing.

As explained by Dr. Lesiak, the DFS lab's "evidence[-]receiving section" then processed the bagged evidence received from Officer Hamlett. On May 4, 2020, Dr. Lesiak retrieved the

bagged evidence which remained exclusively in her possession inside of a secured locker at her workbench until she returned it to the evidence-receiving section of the lab after completing her analysis. Thus, the record reflects that the Commonwealth "account[ed] for every 'vital link in the chain of possession'" of the contraband, from the time that it confiscated the contraband from Walters's cell on January 24, 2020, up until May 4, 2020, when Dr. Lesiak tested the evidence.

The Commonwealth also "establish[ed] with 'reasonable assurance' that the evidence analyzed and presented at trial was in the same condition as it was when obtained by [prison officials]." *Robertson*, 12 Va. App. at 857. Officer Pope testified that the evidence she viewed at trial was the same contraband she confiscated from Walters's cell. She further confirmed that the evidence at trial was in the same or substantially similar condition as the evidence she found in Walters's cell on January 24, 2020. Similarly, Officer Hamlett testified that the evidence at trial appeared to be the same evidence in the same or substantially similar condition as the evidence he both processed on January 27, 2020, and transported to the DFS lab on February 20, 2020. Therefore, since we are required to presume that the officers and DFS staff "properly discharged their official duties," we are compelled to conclude that the trial court did not err in admitting the evidence at trial. *Herndon*, 280 Va. at 143; *Anderson*, 48 Va. App. at 715.

Walters contends, on appeal, that there are several "discrepanc[ies]" in the chain of custody. However, none of the alleged discrepancies constituted a "missing link" that would have constituted a break in the chain of custody. *Pope*, 60 Va. App. at 512. For example, whether Sergeant Warring or Officer Hamlett removed the evidence bag from the drop box goes to *the weight* of the evidence in establishing the chain of custody and could not, by itself, constitute a break. *Id.* at 511. We derive the same conclusion from Officer Pope's testimony that three investigators had access to the evidence box. Moreover, the trial court determined that these minor discrepancies were insufficient to break the chain of custody. Officer Pope also

testified that she wrote on the evidence bag that she gave the evidence to Sergeant Warring not because she personally delivered the contraband to him but because the evidence box in which she placed the contraband was located in Sergeant Warring's office. It was this testimony, in part, that the trial court credited in its finding that evidence of the chain of custody of the contraband was sufficient.

Walters also cites the differing descriptions of the evidence and its contents as factors that went to the *weight* of the evidence. Like the different parties involved with the possessory timeline, the trial court also found these differing descriptions unpersuasive in determining that no break in the chain of custody had occurred. Furthermore, even when considering these "discrepancies" together, Walters fails to show that the discrepancies constitute an abuse of discretion. They "w[ere] simply one among several factors to be considered by the trial judge in assessing the underlying authenticity of [the evidence]." *Crews v. Commonwealth*, 18 Va. App. 115, 120 (1994). And "[a] judge, unlike a juror, is uniquely suited by training, experience and judicial discipline . . . to separate, during the mental process of adjudication, the admissible from the inadmissible, even though he has heard both." *Id.* (second alteration in original) (quoting *Eckhart v. Commonwealth*, 222 Va. 213, 216 (1981)). Hence, we conclude that the record is bereft of any evidence establishing that the trial court abused its discretion. Therefore, we hold that the trial court did not err in finding the chain of custody of the evidence to be proven with "reasonable assurance." *Hargrove*, 53 Va. App. at 553 (quoting *Anderson*, 274 Va. at 479).

C. *The record contains sufficient evidence to support Walters's possession convictions.*

Walters also claims that the Commonwealth's evidence was insufficient to support his convictions for possession of methamphetamine and possession of illegal substances while an inmate. In support of this assignment of error, Walters first contends that the Commonwealth failed to prove that he intended to possess the contraband, only proving that he owned the jar of

- 12 -

medical cream. He also contends that since his confession to Officer Pope was not credible and that the remaining evidence in the record only shows there was "at least a fifty percent chance [the drugs] belong[ed]" to him, the Commonwealth's evidence was insufficient to sustain his convictions. We disagree.

"[T]o convict a person of illegal drug possession, the Commonwealth must prove beyond a reasonable doubt that the accused was aware of the presence and character of the drug and that the accused consciously possessed it." *Yerling v. Commonwealth*, 71 Va. App. 527, 532 (2020). "[P]roof of actual possession is not required; proof of constructive possession will suffice." *Id.* (alteration in original) (quoting *Walton v. Commonwealth*, 255 Va. 422, 426 (1998)).

"Constructive possession of drugs can be shown by 'acts, statements, or conduct of the accused or other facts or circumstances which tend to show that [he] was aware of both the presence and character of the substance and that it was subject to his dominion and control.'" *Bagley v. Commonwealth*, 73 Va. App. 1, 27 (2021) (alteration in original) (quoting *Wilson v. Commonwealth*, 272 Va. 19, 27 (2006)). "A person's ownership or occupancy of premises on which the subject item is found, proximity to the item, and statements or conduct concerning the location of the item are probative factors to be considered in determining whether the totality of the circumstances supports a finding of possession." *Watts v. Commonwealth*, 57 Va. App. 217, 232 (2010). And "[t]he defendant may be shown to have had constructive possession by establishing that the drugs involved were subject to his dominion or control." *Ritter v. Commonwealth*, 210 Va. 732, 741-42 (1970) (finding that a defendant's admission: "It must be mine, it's got my name on it," when questioned about a package of marijuana found in his family's mailbox was sufficient to establish constructive joint possession of the drugs under a predecessor statute).

- 13 -

To satisfy the knowledge requirement, the Commonwealth must show, by direct or circumstantial evidence that the "defendant . . . know[s] . . . that he is possessing a controlled substance." *Sierra v. Commonwealth*, 59 Va. App. 770, 783 (2012). In a recent case, *Yerling*, 71 Va. App. 527, this Court has reiterated that this is done by introducing evidence that shows that the defendant had an "indication of their character." *Id.* at 535 (quoting *Young v. Commonwealth*, 275 Va. 587, 592 (2008)). "[C]ircumstantial evidence [that] also support[s] a finding of a defendant's knowledge of the nature and character of the substance in his possession, [may include] the drug's distinctive odor or appearance, or statements or conduct of others in his presence that would tend to identify it." *Young*, 275 Va. at 591.

In analyzing the record, our "inquiry does not distinguish between direct and circumstantial evidence, as the fact finder itself 'is entitled to consider all of the evidence, without distinction, in reaching its determination.'" *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003)). A conviction may rest on circumstantial evidence alone; in fact, especially in possession cases "circumstantial evidence may be the only type of evidence which can possibly be produced." *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting *Stamper v. Commonwealth*, 220 Va. 260, 272 (1979)). "While no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances . . . may lead a reasonable mind irresistibly to a conclusion." *Id.* at 512-13 (alteration in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)).

Viewing the evidence in the light most favorable to the Commonwealth, we find the record contains sufficient evidence that the contraband in question was constructively possessed by Walters. Initially, Officer Pope testified that when she picked up the jar of medical cream, she heard a "rattling sound" and upon further investigation, she discovered the insert holding the

- 14 -

contraband.  She then asked Walters about the jar and about what was within the jar.  Walters responded by claiming ownership of "all of it."  Hence, his admission came after being questioned about both his possession of the jar, *the jar's concealment* of the insert, and the jar's contents.  At trial, Walters attempted to walk this admission back by clarifying that when asked about the jar, "I said the cream is mine but I never know . . . , what those drugs came from."  Walters also testified that he had only used the cream approximately twice.  The prior statements served as evidence that Walters admitted ownership of the jar and its contents and was aware of its contents.  Walters's statements, both at trial and in his cell, also show he was able to identify the contents of the insert—"two orange strips" and "a piece of an oatmeal packet"—as *drugs* without being prompted or asked whether or not they were drugs by the officer.  We also note that these items were found in his cell.  Hence, the inference from these "facts and circumstances" supports the trial court's finding that he possessed the drugs in question.

Also, Walters's testimony at trial that he did not know about the presence of contraband in the jar as well as his denial that he confessed to knowing the jar contained drugs, coupled with his testimony that he did not use the jar frequently, all support the trial court's decision to find his testimony "incredible."  Conversely, the trial court reasonably credited Sergeant Pope's testimony that Walters claimed ownership of the jar and the contraband inside the jar.  Hence, "after disbelieving . . . [Walters's] testimony, the trier of fact could consider [his] . . . 'testimony as affirmative evidence of guilt.'"  *Camann v. Commonwealth*, 79 Va. App. 427, 443 (2024) (en banc) (quoting *Morris v. Commonwealth*, 269 Va. 127, 134 (2005)).  Hence, the evidence supported both the possession and knowledge elements of his convicted offenses.  *See Cordon v. Commonwealth*, 280 Va. 691, 695 (2010).  Finally, Walters's convictions were not supported by this inference alone since his claim of ownership of the jar *and all of its contents* served to constitute an additional basis for finding sufficient evidence to support his convictions.

- 15 -

We also note, consistent with Virginia precedent, that the "insert" found within the cream jar also served as constructive circumstantial evidence that Walters had knowledge of the "nature and character" of the drugs he possessed. *See, e.g.*, *Young*, 275 Va. at 592. Here, the trial court was confronted with a device that had been purposefully placed into a jar of medical cream. Hence, this case is not like others where the contraband was placed in an object "just as indicative of a piece of trash as it was an intentional hiding place." *Yerling*, 71 Va. App. at 535. Instead, it is one where there was a volitional attempt to hide the contraband from law enforcement using a device created to do so. Thus, by finding the use of such a device in connection with the contraband, the trial court could reasonably conclude that Walters had an "indication of the[] character" of the device's contents. *Id.* Therefore, there was sufficient evidence, in the form of Walters's admission, his incredible testimony, and the device placed into the cream to hide the contraband for the trial court to conclude that the drugs in question were "subject to his dominion and control." *Bagley*, 73 Va. App. at 27 (quoting *Wilson*, 272 Va. at 27).

Finally, Walters's claim that "the evidence may also be consistent with [his] cellmate placing the drugs in the compartment in the jar without his knowledge" does not change our conclusion. The evidence in the record viewed in the light most favorable to the Commonwealth permitted the fact finder, acting reasonably, to "reject[] [Walters's] theories in his defense and f[ind] him guilty." *Hudson*, 265 Va. at 513. And we find nothing in the record that indicates this is not the case here. Thus, we conclude that the record contained sufficient evidence to prove that Walters constructively possessed the illegal substances. Therefore, we affirm the trial court's convictions.

### III. CONCLUSION

For the foregoing reasons, we find no error. Thus, the judgment of the trial court is affirmed.

*Affirmed.*